IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. STEVIE SMITH**

**Direct Appeal from the Criminal Court for Knox County**
**No. 63061    Richard Baumgartner, Judge**

---

**No. E1999-00386-CCA-R3-CD - Decided**
**May 23, 2000**

---

Defendant Stevie Smith was convicted by a jury of two counts of aggravated sexual battery and one count of assault. The trial court subsequently imposed an effective sentence of nine years. Defendant challenges his convictions, raising the following issues: (1) whether the evidence is sufficient to support the convictions for aggravated sexual battery; (2) whether the trial court should have suppressed a statement that Defendant gave to police; and (3) whether the trial court properly admitted evidence about the manner in which offenders make confessions during questioning by police. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WOODALL, J. delivered the opinion of the court, in which TIPTON, J. and OGLE, J. joined.

Mark E. Stephens, District Public Defender, R. Scott Carpenter, Assistant Public Defender, and Paula R. Voss, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Stevie Smith.

Paul G. Summers, Attorney General and Reporter, Patricia C. Kussmann, Assistant Attorney General, Randall E. Nichols, District Attorney General, Charme Knight, Assistant District Attorney General, and Steve Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  FACTS**

Twelve year old B.N. (it is the policy of this Court to refer to the victims of child sexual abuse only by their initials) testified that around Christmas of 1996, Defendant started visiting the residence she lived in with her mother and her siblings. B.N. initially thought that Defendant was a good person, but her feelings changed when he began "[r]ubbing his private parts against [her] bottom" and rubbing her chest.

B.N. testified that on one occasion while she was cooking in the kitchen, Defendant "bent down and pressed his private part against [her] bottom." When B.N. told Defendant that she was uncomfortable, he backed away. On another occasion while B.N. was washing dishes in the kitchen,

Defendant bent his knees and "placed his private on [her] bottom." On one occasion while B.N. was in the living room, Defendant grabbed her and had her sit on his lap. Defendant then rubbed B.N.'s chest with his hand. On another occasion while B.N. was lying on a couch, Defendant lay down behind her. Defendant then put his arms around B.N. and "put his private against [her] bottom." Defendant also told B.N. not to tell what had happened.

Debbie Greene of the Department of Children's Services testified that on April 24, 1997, she and Investigator Sam Brown of the Knoxville Police Department interviewed Defendant at the police station. After Brown read Defendant's rights to him, Defendant signed a waiver of rights form. Defendant initially responded to Brown's questions by stating that he could not recall having any inappropriate contact with B.N. Defendant then said that he might have rubbed her, and some of the allegations might be true. Defendant then gave the following written statement:

> I, Stevie Smith, have rubbed on [B.N.] before Christmas '96. [B.N.] was sitting on the couch watching tv & her mom was gone. I rubbed her on her bottom. The second time, on couch in the living room, I rubbed her chest over her clothes & kissed her mouth & I could have accidentally rubbed her on her vagina over her clothes. The third time, I kissed her on the neck. [B.N.] was in the kitchen doing dishes & I touched her bottom & rubbed my penis against her bottom. One time in a chair, [B.N.] was sitting on my lap & rubbing my chest. I rubbed her on her butt. I have rubbed my penis against her several times. I know I need help. I have thoughts, sexual fantasies, about women & kids. I have been like this since I was young.

Defendant's mother testified for the defense that Defendant was born with meningocele and as a result, he had developmental problems and learning disabilities.

Defendant testified that he had never been alone with B.N. and he had never touched her in an inappropriate manner. Defendant also testified that he was shocked when Brown informed him of the allegations made by B.N.

Defendant testified that during the interview, he denied the allegations at least seven or eight times. Defendant admitted that his signature was on the waiver of rights form, but he could not recall reading or signing the form. Defendant admitted that he had signed the written statement, but he denied that he wrote the statement or read the statement. Defendant testified that he blacked out toward the end of the interview. Defendant claimed that he could not remember making any of the admissions that were contained in the written statement. Defendant subsequently claimed that he did not make the statements.

Dr. Peter Young testified that he had previously evaluated Defendant. Dr. Young opined that Defendant suffered from basic language processing difficulties and he had a poor grasp of higher level language and abstract reasoning. Dr. Young determined that Defendant had an IQ of 72, which was above the level of mental retardation. Dr. Young also determined that Defendant could read at a sixth-grade level.

Dr. Young testified on cross-examination that as a person reading at a sixth-grade level, Defendant could have understood every statement included in his written confession. Dr. Young opined that Defendant would have been able to read everything on the waiver of rights form, but he was not sure whether Defendant would have understood his rights. Dr. Young also opined that Defendant would not black out and lose awareness of what was happening to him.

Investigator Sam Brown of the Knoxville Police Department testified in rebuttal that during the interview with Defendant, he informed Defendant of each of his rights individually. Defendant initialed each individual right and he never indicated that he did not understand his rights. Brown also reviewed the paragraph containing a waiver of rights and he made sure that Defendant understood it. Brown denied yelling at or arguing with Defendant.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence is insufficient to support his convictions for aggravated sexual battery. Defendant does not challenge the sufficiency of the evidence for his assault conviction.

The record indicates that Defendant was indicted and tried for three counts of aggravated sexual battery. The State made the following election of offenses: for count one, the State chose to rely on the evidence that Defendant had placed his private part against B.N.'s bottom while she was cooking in the kitchen; for count two, the State chose to rely on evidence that Defendant rubbed B.N.'s chest while she was sitting on his lap; and for count three, the State chose to rely on evidence that Defendant lay down behind B.N. on the couch and placed his private part against her bottom. The record also indicates that the jury convicted Defendant of the lesser-included offense of assault under count one and the charged aggravated sexual battery offenses under counts two and three.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Under Tennessee law, "[a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (1997).

In addition, "'[s]exual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (1997). Further, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2) (1997).

Defendant does not dispute the fact that B.N. was less than thirteen years of age when the events at issue in this case occurred and there is no question that the State established that element of the aggravated sexual battery offenses.

Defendant initially argues that the evidence is insufficient to support his convictions for aggravated sexual battery because the State failed to prove that there was any touching of Defendant or B.N.'s "intimate parts." We disagree. In regard to the conviction under count two, B.N. testified that Defendant grabbed her, had her sit on his lap, and rubbed her chest with his hand. In addition, Defendant admitted in his statement to police that he had rubbed B.N.'s chest. The "breast of a human being" is expressly listed as an "intimate part" under the statute. As for the conviction under count three, B.N. testified that while she was lying on a couch, Defendant lay down behind her, put his arms around her, and "put his private against [her] bottom." Further, Defendant admitted in his statement that he rubbed his penis against B.N. Both the buttocks of B.N. and the penis of Defendant fit the express definition of "intimate parts" under the statute. The State clearly proved that there was an intentional touching of B.N. and/or Defendant's "intimate parts."

Defendant also argues that the evidence is insufficient because the State failed to prove that any sexual contact was "for the purpose of sexual arousal or gratification." We disagree. Defendant admitted in his statement that he had rubbed B.N.'s chest, he had kissed her on the mouth, and had rubbed his penis against her. In addition, Defendant expressly admitted that he had sexual fantasies about children. It can be reasonably construed from this evidence that the sexual contact was for the purpose of sexual arousal or gratification.

Further, Defendant contends that the evidence is insufficient because B.N.'s testimony was not corroborated by any independent evidence. However, there is no requirement that the victim's testimony be corroborated and regardless, Defendant's own statement corroborated most of the victim's testimony.

Finally, Defendant argues that the evidence is insufficient because the victim was only a child when the events at issue in this case occurred and she was probably confused about what actually happened. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). The jury obviously accredited B.N.'s testimony.

In short, we conclude that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence is sufficient for a rational jury to find beyond a reasonable doubt

that Defendant had committed two counts of aggravated sexual battery. Defendant is not entitled to relief on this issue.

### III. SUPPRESSION

Defendant contends that the trial court erred when it failed to suppress a pretrial statement that he made to police.

During a suppression hearing, Investigator Sam Brown testified that at approximately 11:00 a.m. on April 24, 1997, he and Debbie Greene went to the Hardee's Restaurant where Defendant was employed. Upon arriving at Hardee's, Brown told Defendant that he needed to interview him and Brown asked Defendant to meet him at the police station. Defendant agreed to meet Brown at the police station at 2:00 p.m. Brown then returned to the police station to prepare for the interview.

Brown testified that Defendant and his girlfriend arrived at the police station at approximately 2:00 p.m. Defendant's girlfriend accompanied him to the third floor of the police station, but she remained outside when Defendant went into an interview room with Brown and Greene. Brown told Defendant that he was not under arrest and if he became uncomfortable at any time, "he could walk out of the interview and leave at his own will." Brown gave Defendant a waiver of rights form and after Defendant read the form, Brown read it to him. Brown reviewed each right individually with Defendant and Defendant initialed the line next to each individual right. Defendant stated that he understood his rights and he voluntarily waived them. Defendant also signed the bottom of the waiver form. Brown testified that Defendant did not appear to have any trouble understanding the things that were discussed and Defendant did not appear to have any mental disability.

Brown testified that after Defendant waived his rights, he made a statement that was transcribed by Greene. Defendant was then given the opportunity to review the statement and make corrections. The interview then concluded, and Brown gave Defendant and his girlfriend a ride home.

Brown testified on cross-examination that when Defendant arrived for the interview, Brown took Defendant's photograph, but he did not take Defendant's fingerprints. Brown denied that he told Defendant that the allegations that had been made against him were not serious and Brown also denied that he called Defendant a liar.

Debbie Greene testified that she was present when Defendant read his rights, had his rights read to him, and signed the waiver of rights form. Greene did not see any indication during the interview that Defendant had any mental disability. Greene referred Defendant to a counselor after he stated at the end of the interview that he needed help.

Defendant testified that Brown transported him from Hardee's to the police station. Defendant stated that Brown was angry and argumentative during the interview, and he repeatedly refused to accept Defendant's assertions of innocence. Defendant testified that throughout the

interview, Brown repeatedly stated that Defendant knew that the allegations where true. Defendant denied that Brown told him that he could leave the interview at any time. Defendant stated that when he arrived at the police station, he was both photographed and fingerprinted.

Defendant testified that he could not recall whether Brown read his rights to him. Defendant admitted that his signature was on the waiver of rights form and his initials were also on the form, but he could not recall signing the form. Defendant testified that he blacked out toward the end of the interview and he could not remember how the interview concluded.

At the conclusion of the hearing, the trial court ruled that the statement was admissible because the interview was not a custodial situation. The court also found that there was overwhelming proof that Defendant was advised of his rights before he gave the statement.

**A.**

"Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Indeed, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id.

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9.

An accused may waive this right against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court held that a suspect in police custody

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479, 86 S.Ct. at 1630. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of his or her Miranda rights. Id., 384 U.S. at 479, 86 S.Ct. at 1630. Accordingly, a constitutional waiver of the right against self-incrimination requires the accused to make an intelligent, knowing, and voluntary waiver of the rights afforded by Miranda. Id., 384 U.S. at 444, 86 S.Ct. at 1612.

The evidence in the record does not preponderate against the trial court's finding that Defendant was advised of his right against self-incrimination and he signed a form in which he waived that right. Brown testified during the suppression hearing that he gave Defendant a waiver

of rights form and after Defendant read the form, Brown read it to him. Brown testified that he reviewed each right individually with Defendant and Defendant initialed the line next to each individual right. Brown testified that Defendant told him that he understood his rights and he voluntarily waived them. Brown testified that Defendant did not appear to have any trouble understanding the things that were discussed and Defendant did not appear to have any mental disability. Similarly, Greene testified during the hearing that after Defendant read the waiver of rights form, Brown reviewed each right individually and Defendant then initialed each right to show that he understood it. Greene testified that she did not see any indication that Defendant had a mental disability. Further, Defendant admitted during the hearing that his signature and initials were on the waiver of rights form. In short, there is ample evidence which supports the trial court's finding that Defendant was advised of his right against self-incrimination and he signed a form in which he waived that right.

**B.**

Of course, even when there has been a valid waiver of the right against self-incrimination, a confession must still be voluntary to be admissible. See State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996). In order to be considered voluntary, the statement must not be extracted by "any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." Smith, 933 S.W.2d at 455. Instead, "coercive police activity is a necessary predicate to finding that a confession is not voluntary." Id. In determining whether a confession has been made knowingly and voluntarily, courts must look to the totality of the circumstances. Id. at 455–56.

The record indicates that after the State called Brown and Greene during the suppression hearing, the State moved for "summary judgment . . . on the custodial issue." Shortly thereafter, the following colloquy occurred:

> [DEFENSE COUNSEL]: As we aver in our pleading, your Honor, there are learning disabilities which Mr. Smith has.
>
> THE COURT: Of course, we have not had any proof of that.
>
> [DEFENSE COUNSEL]: That is true, Your Honor. So I guess that is the point of the General making her motion at this point. We don't get to voluntariness, if Your Honor finds that the defendant wasn't in custody. So I mean it is still our position that—
>
> THE COURT: Say that again. We don't get to voluntariness if he wasn't in custody?
>
>    . . . .
>
> [DEFENSE COUNSEL]:: Well, it is my understanding that the threshold issues in a motion such as this to suppress, are that at the time the statement was made—well, there are two threshold issues. A statement was made, and that the defendant was in custody at the time of making the statement.
>
>    . . . .
>
> [DEFENSE COUNSEL]: If you have that prima facie showing, then we get to, you know, the State's proof. Well, if in the course of the State's proof, the State proves that the

defendant wasn't in custody, or if we decide to put on proof ourselves with regard to the custodial interrogation issue, then in essence that is the first question the Court has to answer.

> After the Court would find a custodial interrogation, then we would get to the question of whether or not the waiver was voluntary and the statement was voluntary.

> THE COURT: Okay. But say I find that this was a custodial interrogation, for the purpose of argument.

> . . . .

> THE COURT: I would then have to find that the statement was voluntarily given. Are you saying that; if I find that it is not a custodial interrogation, that I don't have to address whether or not the statement was voluntarily given?

> [DEFENSE COUNSEL]: I don't believe so. . . .

Defense counsel's legal theory that the voluntariness of a statement is only an issue when a statement is given during custodial interrogation is clearly incorrect. See Smith, 933 S.W.2d at 455. However, this erroneous theory was accepted by the trial court. At the conclusion of the hearing, the trial court found that Defendant was not in custody when he gave the statement and thus, the court ruled that the statement was admissible. The trial court made no findings of fact or conclusions of law in regard to whether the statement was voluntarily made.

Notwithstanding the trial court's failure to make any findings of fact or conclusion of law about the voluntariness of Defendant's statement, we conclude that there is no need for a remand in this case. Quite simply, no proof was introduced during the suppression hearing that Defendant's statement was the result of the kind of "coercive police activity" that "is a necessary predicate to finding that a confession is not voluntary." See Smith, 933 S.W.2d at 455. In fact, after defense counsel finished the direct examination of Defendant, he stated:

> I guess what I was attempting to do, Your Honor, since the salient point at this point in our hearing is custodial status is I was trying to limit all of my questions to whether or not the circumstances—what the circumstances were that relate to custodial status. So I think at this point in the hearing, that is the only relevant field of inquiry. The voluntariness of the statement is not one which I have broached with Mr. Smith in the course of my direct examination. (Emphasis added).

In short, the record does not preponderate against the trial court's findings that Defendant was advised of his Miranda rights and he signed a waiver of those rights. Moreover, no proof was introduced during the suppression hearing that would support a finding that Defendant's statement was involuntary. Under these circumstances, we conclude that the trial court did not err when it failed to suppress Defendant's statement. Defendant is not entitled to relief on this issue.

## IV. CHALLENGED TESTIMONY

Defendant contends that the trial court erred when it admitted testimony about the manner in which offenders make confessions during questioning by police.

The record indicates that during Greene's direct examination, the prosecutor asked Greene about the nature of the interview with Defendant. During her description of the interview, Greene stated, "The training that we have been to, as far as how to interview suspects is that, initially, we know they deny lots of times." Defense counsel objected to this testimony, but the trial court made no ruling on the objection.

During Brown's rebuttal testimony, the prosecutor asked Brown how he was able to obtain a confession during his interview of Defendant. Brown responded, "Uh—in general, usually, you get—uh—you get denials up front from your people that you are interviewing." Defense counsel objected, but the trial court overruled the objection and stated, "This is what he does for a living. Go ahead." Brown then testified that "In general, you do get denials up front. Then you know, based on investigative techniques and things through that—you know, through the interview—you develop the truth."

In addition, the prosecutor made the following comment during closing argument: "Now [Brown and Greene] told you that, in the beginning, [Defendant] didn't admit right off. They said nobody does. He went through the denial, then he went through the minimization, and then he told what he had done." There was no objection to this comment. The prosecutor also commented that Brown and Greene had testified that they did not tape the interview of Defendant because when they try to tape an interview in a child sex abuse case, the person being interviewed refuses to talk. There was no objection to this comment.

Defendant argues that the testimony of Brown and Greene was improper because it amounted to an allegation that Defendant's statement to police was like that of sexual offenders in general who have specific psychological traits and a recognizable pattern of disclosure. Defendant also argues that this error was magnified by the prosecutor's comments about the testimony during closing argument.

## A.

Although it is not entirely clear, the trial court apparently ruled that the testimony of Brown and Greene was admissible because it was expert testimony.

The admission of expert testimony regarding scientific and technical evidence is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

In addition, Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall

disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

"Questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court, whose ruling will not be overturned in the absence of abuse or arbitrary exercise of discretion." State v. Begley, 956 S.W.2d 471, 475 (Tenn. 1997).

The Tennessee Supreme Court has promulgated specific principles to guide a trial court in the determination of whether to admit scientific or technical evidence:

First, the evidence must be relevant to a fact at issue in the case. Tenn. R. Evid. 401, 402. Second, the expert must be qualified by specialized knowledge, skill, experience, training, or education in the field of expertise, and the testimony in question must substantially assist the trier of fact to understand the evidence or determine a fact in issue. Tenn. R. Evid. 702; McDaniel[ v. CSX Transportation, Inc., 955 S.W.2d 257, 264 (Tenn. 1997)]; see also Otis v. Cambridge Mutual Fire Ins. Co., 850 S.W.2d 439, 443 (Tenn. 1992). Finally, when the expert witness offers an opinion or states an inference, the underlying facts or data upon which the expert relied must be trustworthy. Tenn. R. Evid. 703; McDaniel, [955 S.W.2d] at 264.

Begley, 956 S.W.2d at 475.

We conclude that the challenged testimony of Brown and Greene that criminal suspects typically deny committing offenses before confessing during police interrogation was not admissible as expert testimony. First, the testimony was simply not relevant. Rule 401 of the Tennessee Rules of Evidence states that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the general behavior of other criminal suspects during questioning by police had no value in the determination of whether Defendant was guilty of the offenses for which he was charged in this case. Second, evidence about the behavior of criminal suspects in other cases did nothing to assist the trier of fact to understand the evidence or determine a fact in issue. Further, there was absolutely no evidence from which it can be determined that the underlying facts or data upon which Brown and Greene relied on in reaching their opinions were trustworthy. Therefore, the challenged testimony of Brown and Greene was not admissible expert opinion testimony.

**B.**

The State apparently concedes that the challenged testimony of Brown and Greene was not admissible as expert opinion testimony. Rather, the State argues that the testimony was admissible as the opinions of lay witnesses.

The admissibility of opinion testimony from lay witnesses is governed by Rule 701 of the Tennessee Rules of Evidence, which states in relevant part:

If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are

-10-

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

The fact that the challenged opinion testimony came from lay witnesses rather than expert witnesses does not make the evidence any more relevant. The testimony was simply of no help to the jury in determining a fact in issue. Moreover, Rule 403 of the Tennessee Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Even if this testimony was somehow relevant, its minimal probative value was substantially outweighed by the unfair prejudice of its tendency to imply that because criminals always deny their crimes before admitting to them, Defendant is a criminal because he also denied his offenses before confessing to them. Thus, the challenged testimony was not admissible as the opinion of lay witnesses.

## C.

Defendant also complains that the prosecutor's comments during closing argument emphasized the improper testimony of Brown and Greene. However, the record indicates that Defendant did not object when the prosecutor made the comments. By failing to make a contemporaneous objection, Defendant waived any complaint about the comments. See State v. Robinson, 971 S.W.2d 30 (Tenn. Crim. App. 1997); State v. Gilmore, 823 S.W.2d 566, 570 (Tenn. Crim. App. 1991); Tenn. R. App. P. 36(a).

## D.

Although we conclude that the trial court erred when it permitted Brown and Greene to testify that criminal suspects typically deny committing offenses before confessing during police interrogation, we conclude that the error was harmless.

Rule 36(b) of the Tennessee Rules of Appellate Procedure states that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." In this case, B.N. was absolutely unequivocal in her testimony that Defendant had "pressed his private part against [her] bottom" in the kitchen and on the couch and that he had rubbed her chest with his hand while she sat on his lap. Moreover, Defendant specifically admitted in his statement to police that he had rubbed B.N.'s chest and he had rubbed his penis against her several times. Defendant also admitted to kissing B.N. and to having sexual fantasies about children. Given the strength of the evidence in this case, we are confident that the error in admitting the improper testimony did not affect the judgment in this case and did not result in prejudice to the judicial process. Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.