IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 3, 2002 Session

## STATE OF TENNESSEE v. TERRY LYNN CARTER

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6499     Jon Kerry Blackwood, Judge**

---

**No. W2001-02329-CCA-R3-CD - Filed February 20, 2003**

---

Defendant, Terry Lynn Carter, appeals her conviction in the Hardeman County Circuit Court for aggravated assault. Defendant was sentenced, as a Range II multiple offender, to serve nine years in the Department of Correction. On appeal, Defendant argues that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt; that the trial court erred by allowing the assistant district attorney to make improper comments at trial; and that the prosecuting attorney failed to provide defense counsel prior to trial with a copy of a letter that Defendant wrote to the victim. After reviewing the record, we conclude that the trial court erred in admitting the letter into evidence because the State violated its discovery obligation to Defendant. We reverse the judgment of the trial court and remand for a new trial.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Reversed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Wayne T. DeWees, Bolivar, Tennessee, for the appellant, Terry Lynn Carter.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Walter Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Defendant was convicted for stabbing her boyfriend, Sonny McCarter, in the early morning hours of July 12, 2000. The victim, Sonny McCarter, testified that he and Defendant dated for "about twelve years, off and on." He was married to another woman for most of his relationship with Defendant. His wife died in April of 1999, and shortly after her death, Defendant moved into McCarter's house. The record clearly indicates that Defendant's and McCarter's relationship was

tumultuous at best and involved several instances of physical abuse and drug and alcohol use. McCarter testified that he is a "manic depressive" and has a "chemical imbalance," for which he takes medication. If he does not take his medication, he "goes crazy."

Lafaye Rhodes, McCarter's sister, testified that Defendant and McCarter argued a lot and drank alcohol and took pills often. On one occasion, Rhodes, at the request of her mother, went to McCarter's house to check on Defendant because they were arguing. Rhodes testified that McCarter would not allow Defendant to leave the house and that he pushed her down each time she attempted to leave. He threatened to hit Defendant with a beer bottle, but Rhodes took the bottle out of his hand.

McCarter testified about several incidences of violence between Defendant and himself throughout their relationship. About four months after Defendant moved into McCarter's house, he began drinking and assaulting her. On one occasion, Defendant's twelve-year-old daughter was visiting her father. She called Defendant from her father's house. McCarter picked up the phone and heard Defendant talking to her daughter's father. McCarter got a loaded revolver from the closet, held it to Defendant's head, and told her that he "would blow her brains out." Defendant's daughter heard this threat over the phone and called the police.

On another occasion, Defendant was recovering from surgery after having been bitten by a dog. Upon returning home from the hospital, Defendant was lying in bed with her daughter. Defendant's daughter testified that she and her mother were "playing," and she called out to McCarter, "Sonny, help me." McCarter came into the bedroom and "knocked" Defendant's daughter onto the floor and pulled Defendant off the bed by her feet and "busted her stitches out." Defendant's daughter called the police. The police responded to the call, but they did not arrest McCarter. The police drove Defendant to her house.

After that incident, Defendant moved back into her own house. McCarter admitted stalking Defendant, testifying that he sat outside of her house until 1:00 or 2:00 a.m. She asked him to leave, but he refused. He went to her house numerous times uninvited. He testified that he wanted to resume sexual relations with her, but she refused on numerous occasions. Defendant's daughter testified that she saw McCarter sitting in his car outside their house on many occasions after they moved out of his house. She asked him what he was doing there, and he said that he was going to burn their house down. They never called the police though they threatened to several times.

On July 11, 2000, Sonny McCarter and Bob Grace, Defendant's brother-in-law, began drinking beer around 9:00 a.m. That same afternoon, McCarter, Bob Grace, his wife Teresa Grace, who is Defendant's sister, and Defendant all drove to Ripley, Mississippi, to visit their friend Nancy Monhundro. They rode together in McCarter's vehicle and McCarter drove. McCarter testified that he had been drinking heavily and taking pills all day. He also used crack cocaine that day. He did not remember Defendant using any drugs that day although he testified that she, too, uses drugs.

Bob Grace described an altercation that occurred between Defendant and McCarter at Nancy Monhundro's house. Defendant saw an old friend whom she had not seen in a long time. The friend grabbed Defendant and hugged her and sat her down on his lap. McCarter saw this and became enraged. Grace testified that McCarter "jumped up and said that he wasn't taking this stuff no more," and left. McCarter testified that he struck Defendant in the face. Grace testified that he had never seen McCarter strike Defendant though they argued often and McCarter had threatened to do bodily harm to Defendant. McCarter left Monhundro's house and drove to Defendant's house.

He entered the house using a key that he had made without Defendant's consent or knowledge. He had previously changed the locks when the father of Defendant's daughter was visiting Defendant and her daughter. McCarter kept a key for himself and never told Defendant about it. When McCarter arrived at Defendant's house, he went into the bedroom and fell asleep.

McCarter left Defendant and Teresa and Bob Grace in Mississippi without a way home. Later that night, Nancy Monhundro drove them back to Defendant's home. When they arrived, they saw McCarter's vehicle in the driveway. McCarter was in bed asleep when he heard someone at the door. He got up and went to the door. McCarter testified that Defendant came through the door, and he struck her with his fist as she entered the house. He knocked her backwards through the door. He testified that he then got back in bed and fell asleep. He only remembered striking Defendant in the doorway and later waking up and seeing blood running down his arm. He woke up three days later in the hospital in Jackson, Tennessee, and discovered that he had been stabbed. At the preliminary hearing, however, McCarter testified that he remembered Defendant stabbing him.

Bob Grace testified that upon arriving at Defendant's house, Defendant went inside the house first. Seconds later, he heard screaming and yelling. He began walking towards the house, and Defendant came running hysterically out of the house. Grace testified that Defendant said, "Sonny hit me and I think he is hurt." Grace helped Defendant outside and he observed bruises on the right side of her face. He went inside the house and saw a knife lying on the floor beside the bedroom door. Grace testified that he observed indications that a fight had taken place. He noticed a hole in the wall like someone had punched it. He looked inside the bedroom and saw McCarter lying halfway on the bed. Grace observed that McCarter had been stabbed. He told his wife to call an ambulance.

Police officer Anthony Hamburg responded to a call at Defendant's residence in the early morning hours of July 12, 2000. When he arrived, Defendant was sitting outside on the ground beside a parked vehicle. Inside the house, he found a knife lying in the floor in the hallway. The victim was lying on the bed, and he had a stab wound on his right side just above his abdomen. Officer Hamburg did not observe any signs of a struggle. Officer Hamburg testified that Defendant appeared to be in pain, and she was also taken to the hospital. When he saw her a couple of hours later at the hospital, her face was bruised.

Susan McConnell, the custodian of medical records at Jackson Madison County General Hospital, testified that Defendant's medical records from July 12, 2000, reveal multiple drug use,

including alcohol, cocaine and prescription drugs. At the hospital, Defendant denied having used any drugs and told hospital personnel that someone had put something in her drink. She had multiple bruises to her face. The last thing Defendant remembered was unlocking the door and being hit. She complained of a headache, seeing double, and severe left knee pain. She appeared drunk and disoriented. She exhibited signs of a concussion, but her symptoms could also be attributed to drug use.

Defendant testified at trial. She testified that she and McCarter had a "rocky" relationship. After McCarter's wife died in April of 1999, Defendant lived with him in his house for four months. She and her daughter moved back into her own house when McCarter began drinking heavily and taking a lot of pain pills. Defendant testified that McCarter has a chemical imbalance and drinking changes his personality. She testified that when he drinks, he gets hostile and jealous.

Defendant testified that on the way to Mississippi, she bought a six-pack of "pony beers" for herself. When they arrived at Monhundro's house, Defendant gave one of her beers to McCarter. She testified that during the course of the evening, he switched beers with her. After McCarter became angry over the interaction between Defendant and a friend, he told Defendant that he was going to his house and left. Nancy Monhundro drove Defendant and the Graces to Defendant's home. When they arrived, Defendant got out of the car first and walked around to the side door of her house. She opened the door and saw McCarter standing just inside the door. He hit her two or three times, knocking her down. She pulled herself up and tried to push him away. He was pulling her leg, on which she was wearing a brace from having had knee surgery. There was a large bag of dog food sitting beside the door. A knife, which she used to open the bag earlier, was lying beside it. She grabbed the knife and stabbed McCarter as he came towards her. She dropped the knife and ran outside. She ran to Bob Grace and said, "Sonny has hurt me, and I think I have hurt him." She testified that she did not "know what all [she] said, but [she] was hysterical."

On cross-examination, Defendant testified regarding a letter she wrote to McCarter from jail following the incident. In the letter, Defendant stated that she did not remember clearly the events of that night, explaining that she must have "snapped." Her defense at trial was that she acted in self-defense, but in the letter, Defendant makes reference to other defense possibilities, including that she had "mental problems" and that she was "set up." Defense counsel objected to the State's introduction of the letter, arguing that the State failed to comply with the rules of discovery. The State responded that it gained possession of the letter only twenty-four hours prior to introducing it into evidence.

**Sufficiency of the Evidence**

Defendant argues that the evidence at trial was insufficient to support her conviction for aggravated assault and that the evidence overwhelmingly supports her defense of self-defense.

When an accused challenges the sufficiency of the convicting evidence, we must determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'" *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979)). In evaluating the sufficiency of the evidence, this court will afford the prosecution the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Questions regarding the credibility of the witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact, not this court. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). Furthermore, a guilty verdict replaces the presumption of innocence with a presumption of guilt, and the defendant has the burden of demonstrating on appeal why the evidence does not support the jury's findings. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

A conviction for aggravated assault requires proof beyond a reasonable doubt that Defendant intentionally or knowingly committed an assault as defined in Tenn. Code Ann. § 39-13-101 and caused serious bodily injury to another or used or displayed a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1) (1997). A person commits an assault when that person intentionally, knowingly, or recklessly causes bodily injury to another, or causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a) (1997).

To establish the charges in the indictment against Defendant, the State was required to prove beyond a reasonable doubt that Defendant unlawfully and knowingly caused bodily injury to McCarter by the use of a deadly weapon. A person acts knowingly with respect to a result of the person's conduct when "the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (1997).

Taken in the light most favorable to the State, as we must do when evaluating the legal sufficiency of the evidence, the proof at trial was that on the night of the offense, Defendant and McCarter had an angry confrontation at Nancy Monhundro's house. Following this argument, McCarter left and drove to Defendant's house. He entered Defendant's house without her consent or knowledge. When Defendant arrived home, she saw McCarter's vehicle in her driveway. When she entered the house, McCarter struck her with his fist. McCarter then withdrew from the confrontation and went back to bed. Defendant stabbed McCarter with a knife and ran out of the house. McCarter and Defendant were the only two people inside the residence. The proof in the record supports the jury's conclusion that Defendant knowingly caused bodily injury to McCarter by the use of a knife.

Defendant contends that the jury should have found that she stabbed McCarter in self-defense. The issue of self-defense is a question of fact for the jury's determination. *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). The jury, by its verdict, rejected Defendant's claim of self-defense. Tennessee Code Annotated section 39-11-611(a) provides:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to

protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

In this case, evidence was introduced to support Defendant's theory of self-defense. The proof shows that Defendant was unarmed when she entered her house. McCarter struck Defendant as she entered the house. The injuries sustained to Defendant's face, jaw and leg support the inference that Defendant reasonably believed there was an imminent danger of death or serious bodily injury.

When evidence is introduced which supports a defendant's claim of self-defense, the burden then falls on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. *See* Tenn. Code Ann. § 39-11-201(a)(3) (1997); *State v. Belser*, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996).

Bob Grace, the first person to enter the house after Defendant ran outside, testified that he saw the knife lying on the floor beside the bedroom door. McCarter testified that after he struck Defendant, he returned to bed. A rational trier of fact could reasonably conclude that Defendant followed McCarter to the bedroom where she stabbed him. The jury accredited McCarter's testimony that he retreated to the bedroom after striking Defendant in the doorway and rejected Defendant's testimony that she stabbed McCarter during a struggle in the hallway. Furthermore, police officers observed no evidence of a struggle inside the house. Tennessee Code Annotated section 39-11-611 requires that the defendant's belief of imminent death or serious bodily injury be real or that defendant honestly believe it to be real at the time. If the danger dissipated, Defendant's claim of self-defense must fail. There is sufficient evidence in the record from which a jury could conclude that Defendant did not act in self-defense. Defendant is not entitled to relief on this issue.

**Improper Comments by the State**

Defendant argues that the trial court erred by allowing the assistant district attorney to make improper comments at trial. Specifically, Defendant contends that the State improperly accused Defendant of "lying" during its cross-examination of Defendant. The record shows that during the State's cross-examination of Defendant, the prosecuting attorney questioned Defendant regarding her inconsistent testimony as to when she actually remembered stabbing the victim. The prosecutor asked Defendant if she "lied" when she told her friends that she did not remember the stabbing. Defense counsel made a timely objection, but the court's ruling is not in the record. Nevertheless, we do not believe that the prosecutor's comment was improper. He was making reference to her inconsistent testimony regarding her memory of the stabbing.

Defendant also complains about remarks made by the prosecuting attorney during closing argument. During the State's closing argument, the prosecuting attorney suggested that the only witnesses who were credible were the police officers and the medical personnel. Also, referring to Defendant, the prosecutor told the jury, "this is a lady that will manipulate you, if you let her." The record indicates, however, that Defendant failed to make a contemporaneous objection. Defendant has therefore waived any consideration of the alleged improper comments during the State's closing argument. Without objection at trial, the issue is waived on appeal. *See* Tenn. R. App. P. 36(a); *State v. Smith*, 42 S.W.3d 101, 112-113 (Tenn. Crim. App. 2000).

**Defendant's Written Statement**

During its cross-examination of Defendant, the State offered to introduce into evidence a letter that Defendant wrote to the victim Sonny McCarter from jail. The trial court admitted the letter over defense counsel's objection. Defendant appeals the trial court's ruling regarding the letter and argues that the State violated a rule of discovery. The record shows that defense counsel made a written request for discovery prior to trial, specifically requesting that the State permit Defendant to inspect and copy or photograph any relevant written or recorded statements made by Defendant within the possession, custody or control of the State pursuant to Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure. Rule 16(a)(1)(A), Tenn. R. Crim. P., provides in pertinent part as follows:

> Statement of Defendant. Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general. . . .

At trial, Defendant claimed that she stabbed McCarter in self-defense. In the letter to McCarter, Defendant states, "I can't believe I would hurt the person I can always count on, my partner, my buddy, my best friend. . . . I don't know why I snap[ped]. I know I have been mean sometimes, but not enough to hurt you like this. . . . So, why would I hurt the only man that really loves me and is good to me." The content of the letter tends to negate Defendant's claim of self-defense. During cross-examination, Defendant insisted that there was another page of the letter, in which she claims that she acted in self-defense. Defendant also testified that she would not expose her daughter to a dangerous situation. In the letter, however, she tells McCarter that her daughter "needs counseling after all this. . . . She will have to [accept] us together." Defendant explained that at the time she wrote the letter, she thought that McCarter was her best chance of getting out of jail, and that she had not yet been advised of any possible defenses.

In the letter, Defendant also makes references to having possibly been "set up." At trial, she explained that when she wrote the letter, she only remembered "bits and pieces" of what happened that night. She vaguely remembered stabbing him. She testified that McCarter brought the possibility of a "set up" to her attention when he denied having hit her. He later admitted that he hit

her. Defendant explained that she was "trying to figure out exactly what happened," and she wrote the letter to find out what McCarter knew or remembered about the incident.

The State argued incorrectly in the trial court that "Rule 16 statements [only] have to do with statements provided by Defendant to law enforcement." The required disclosure is not dependent on whether the written statement was made to a law enforcement official as is the case with a defendant's oral statements. Tenn. R. Crim. P. 16(a)(1)(A). The only requirements for a defendant's written statement to be discoverable are that the statement (1) be made by the defendant, (2) be relevant, (3) be within the possession, custody or control of the state, and (4) be known, or should be known through due diligence, by the district attorney general to exist. *Id.*; *State v. Daniel Leroy*, 1993 Tenn. Crim. App. LEXIS 499, No. 03C01-9206-CR-199 (Tenn. Crim. App. at Knoxville, filed August 4, 1993) *no perm. to appeal filed*.

It was established through the testimony of Defendant that she wrote the letter. The letter is clearly relevant within the meaning of Rule 16. The term "relevant," as used in Rule 16(a)(1)(A), means relevant to the crimes alleged in the indictment. *State v. Vanderford*, 980 S.W.2d 390, 398 (Tenn. Crim. App. 1997). In addition, the State concedes that the letter was within its possession for at least twenty-four hours prior to its introduction into evidence. We conclude that the letter was discoverable, defense counsel made a proper request for its discovery, and the State failed to comply with Rule 16. Therefore, the trial court should not have admitted the letter.

The State asserted in the trial court and asserts in this appeal that it did not receive the letter until the day prior to its admission into evidence. During a bench conference, the State told the trial court, "Your Honor, honestly, it came to my possession yesterday. Officer Henson had gotten it from Sonny McCarter, but I don't know when he got it from Sonny McCarter." The trial court asked the prosecuting attorney, "You just took possession of it yesterday?" The prosecutor responded, "Yes, Your Honor."

"The prosecutor's duty to disclose extends not only to material in his or her immediate custody, but also to statements in the possession of the police which are normally obtainable by 'exercise of due diligence,' that is, a request to all officers participating in the investigation or preparation of the case." *State v. Hicks*, 618 S.W.2d 510, 514 (Tenn. Crim. App. 1981). Moreover, the duty to disclose is a continuing obligation. Rule 16(c), Tenn. R. Crim. P., provides:

> If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under [Rule 16], [he] shall promptly notify the other party or [his] attorney or the court of the existence of the additional evidence or material.

We conclude that the State was obligated to disclose and produce Defendant's letter as soon as practicable after discovery of its existence. Furthermore, the State's failure to comply with discovery disadvantaged Defendant in her preparation for trial. The prosecuting attorney maintains that he became aware of the letter on the day before he introduced it into evidence. Defendant took

the stand the following day after three other witnesses testified for the defense that morning. The State introduced the letter during its cross-examination of Defendant. Defendant may have decided not to testify at all if timely disclosure had been made. Under these circumstances, withholding the statement constitutes reversible error.

The State argues that even if this court concludes that the State's failure to provide Defendant with a copy of the letter was a violation of Rule 16(a)(1)(A), the overwhelming evidence of Defendant's guilt makes the trial court's error in admitting the letter harmless beyond a reasonable doubt. We do not agree with the State. While we have held that the evidence was legally sufficient to support the verdict, the State's proof of Defendant's guilt was not overwhelming. We conclude that the error more probably than not affected the judgment below. *See* Tenn. R. App. P. 36(b).

## CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for a new trial.

_____
THOMAS T. WOODALL, JUDGE