# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs February 03, 2015

## STATE OF TENNESSEE v. ED LOYDE

**Appeal from the Criminal Court for Shelby County**
**No. 1200603    James C. Beasley, Jr., Judge**

_____

**No. W2014-01055-CCA-R3-CD  - Filed April 6, 2015**

_____

The defendant, Ed Loyde, was convicted of one count of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony. He received an effective sentence of thirty-five years. On appeal, he raises the sole issue of whether the evidence was sufficient to support his convictions. After thoroughly reviewing the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; and Harry E. Sayle III (on appeal) and Lawrence R. White (at trial), Assistant District Public Defenders, for the appellant, Ed Loyde.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Teri Fratesi and Cavett Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## FACTS AND PROCEDURAL HISTORY

In September of 2010, the defendant had been evicted from his residence and needed a place to stay. He was friends with the victim's mother, and she brought the defendant's plight to the attention of the victim's grandmother, G.H.[1] After speaking with the defendant, G.H. agreed to let him live in her home. At the time, the eight-year-old victim, her mother, her stepfather, her older brother, and her younger brother were all living with G.H. G.H. and the defendant agreed that the stay would only be for a few months, until the defendant could "get back on [his] feet," and that he would pay G.H. rent. G.H. had seen the defendant at church, and he informed her that he was the musical director for two churches and an aspiring preacher.

G.H.'s home had five bedrooms, and the defendant slept in the living room. He paid rent for the first three months that he lived with G.H. and her family, but he stopped paying rent after November of 2010. G.H. allowed several months to pass before bringing up the issue of the unpaid rent. The defendant informed her that he had not received a settlement from the bank that he was expecting, and he told G.H. that he would pay rent once he received his settlement. By the end of April of 2011, the defendant still had not paid G.H. any rent money, and she evicted him from her home.

Shortly after the defendant left G.H.'s residence, the victim told G.H. that the defendant had abused her. G.H. immediately called the police. Officer Jamie Lambert testified that he received a call on May 1, 2011, regarding a criminal assault at G.H.'s address. He was the first officer to arrive at G.H.'s residence, and he spoke with G.H. and the victim in the living room. G.H. informed him that the victim had been sexually assaulted. When Officer Lambert spoke with the victim, she appeared "[n]ervous and hesitant to speak with [him]." The victim told Officer Lambert that on April 9, 2011, the defendant told her to go to her room, lie down, and remove her clothes. The defendant proceeded to fondle her vaginal area and then penetrated her, and this episode lasted three or four minutes. After the incident, the defendant instructed the victim not to tell anyone what happened and exited the room. She waited until May 1st to report the incident because until that date, the defendant still lived in G.H.'s home, and the victim was afraid of what the defendant might do to her.

After the initial interview with Officer Lambert, G.H. took the victim to the Child Advocacy Center ("CAC"), where a nurse administered a sexual assault exam. The victim also participated in a forensic interview with Letitia Cole. Ms. Cole testified that the victim made an "active disclosure," which is a full disclosure of abuse. The victim identified the

---

[1] In order to protect the privacy of the victim and her family, we will refer to family members by their initials.

defendant as the perpetrator, and she was able to describe the relationship between herself and the defendant and used an age-appropriate vocabulary in referring to different body parts. She told Ms. Cole that the incident occurred on the couch in her living room. The defendant touched her breast and then told her to go into the living room, take her clothes off, and lie down on the couch.

At trial, the victim testified about the incident that occurred with the defendant. She said that the abuse occurred in G.H.'s living room where the defendant touched her breast and penetrated her vagina with his penis. The victim was in her home with her two brothers and the defendant. Her grandmother was also at the home and was asleep in her room. The defendant instructed the victim's brothers to go outside and play, and he locked the door once they exited the house. When the victim asked if she could go outside as well, the defendant told her she could not. The defendant removed the cushions from the couch, placed them on the floor, and asked the victim to help him to clean the couch. He then placed his hand under her shirt and bra and touched her breast for "two or three minutes." The defendant put the victim on her stomach on the pillows, and he told her to pull down her pants. The victim heard "a buckle of a belt" and "a zipper," and she felt the defendant on top of her and something "hard" between her legs. The defendant penetrated her vagina with his penis, and his body "was going up and down." She felt his penis inside of her vagina. The victim estimated that the defendant was on top of her for "for fifteen to twenty minutes."

The defendant stopped penetrating the victim when he heard the victim's stepfather at the door. The defendant started "trying to sweep out the stuff on the couch," and the victim went to her bedroom. When she later went to the bathroom, she felt a "wetness" between her legs that had not been there before the defendant penetrated her. She testified that she was not bleeding after the incident.

The victim could not recall the exact date of the incident, but she testified that it occurred in April, several weeks before her April 21st birthday. She told her older brother about the abuse, but she did not make a disclosure to anyone else until after the defendant had moved out of the residence. Her brother testified that the defendant continued to live with the family for a month after the victim revealed the abuse, but he agreed that it could have been as long as nine weeks.

On cross-examination, the victim testified that she did not tell police officers that the defendant touched her vagina with his hand or that the incident took place on her bedroom floor and lasted for three or four minutes. She recalled telling Ms. Cole that the incident occurred on the couch instead of on the floor. She remembered telling police officers and the forensic interviewer that the defendant told her to take off all of her clothes, and she agreed that she testified at trial that the defendant told her only to pull her pants down and

3

that she did not take off all of her clothes.

Dr. Karen Lakin testified as an expert in pediatrics and child sexual assault. She testified that a sexual assault exam was performed on the victim. During the examination, the victim stated that the defendant "raped [her]." She said that the defendant "stuck his lower part in [her] private part" and touched her breast. Dr. Lakin testified that there were no abnormalities or evidence of injuries were found during the examination. She testified that in "ninety-five to ninety-eight percent" of pediatric sexual assault cases, there were no physical findings of assault. She explained that there were not often physical findings because children often did not disclose the assault immediately after it occurred. Dr. Lakin stated that an increased passage of time between the assault and the examination made it less likely that the examination would produce physical findings consistent with sexual assault. She testified that in cases where the examination occurred more than seventy-two hours after the assault, there was not an attempt to collect DNA evidence because the procedure would be ineffective. She also testified that the vaginal area was able to heal very quickly, meaning that there would be no evidence of an assault if the area were examined several weeks after the assault.

The jury found the defendant guilty as charged in both counts. The trial court imposed an effective sentence of thirty-five years. The trial court denied the defendant's motion for new trial, and he timely filed a notice of appeal. We now proceed to consider his claims.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain his conviction. Specifically, he contends that because there was no forensic evidence of the rape and the victim's account of the incident was "sketchy," his convictions must be reversed.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions

concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Aggravated sexual battery is defined as "the unlawful sexual contact with a victim by the defendant or the defendant by the victim" when the victim is less than thirteen years of age. T.C.A. § 39-13-504(a)(4) (2010). "Sexual contact" includes the intentional touching of the victim's intimate parts for the purpose of sexual arousal or gratification. T.C.A. § 39-13-501(6). "Intimate parts" includes the breast of the victim. T.C.A. § 39-13-501(2). Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" includes sexual intercourse, cunnilingus, fellatio, or anal intercourse. T.C.A. § 39-13-501(7).

The fact that there was no forensic evidence of the sexual assault does not entitle the defendant to relief. First, forensic evidence is not required to establish proof of rape or sexual battery, as evidence may be sufficient to sustain a conviction for rape of a child or aggravated sexual battery when the only evidence is the testimony of the victim. *See State v. Collier*, 411 S.W.3d 886, 891-92 (Tenn. 2013); *State v. Smith*, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000). Second, Dr. Lakin testified that the vast majority of pediatric sexual assault cases did not yield forensic evidence because the disclosure often occurred well after the assault. Here, the record reflects that several weeks passed between the assault and the victim's disclosure, and Dr. Lakin testified that this length of time would have rendered a rape kit ineffective.

In claiming that the victim's account of the abuse was "sketchy," the defendant essentially asks this court to reevaluate the victim's credibility, which we will not do on appeal. As the final arbiter of credibility, the jury chose to resolve the discrepancies between the victim's pretrial statements to police and the forensic interviewer and her testimony at trial in favor of the State. Viewed in the light most favorable to the State, the evidence shows that the defendant was alone with the victim in the living room of G.H.'s residence. The defendant reached his hand underneath the victim's shirt and bra, placing it on her breast. He then placed her on the ground on couch cushions, instructed her to pull her pants down, and penetrated her. The victim testified that she felt the defendant on top of her and felt his penis inside of her vagina. She testified that when she later went to the bathroom, she felt

a "wetness" between her legs that was not there before the defendant penetrated her, and she testified that it was not blood. We conclude that the evidence is sufficient to sustain the defendant's convictions for aggravated sexual battery and rape of a child. The defendant is not entitled to any relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JOHN EVERETT WILLIAMS, JUDGE

6