IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 7, 2017 Session

## STATE OF TENNESSEE v. MARK HAROLD LULLEN a.k.a. LUELLEN

**Interlocutory Appeal from the Circuit Court for Fayette County**
**No. 15-CR-150      J. Weber McCraw, Judge**

_____

**No. W2016-00709-CCA-R9-CD**

_____

We granted this interlocutory appeal to review the trial court's order granting the motion of the defendant, Mark Harold Lullen a.k.a. Luellen, to suppress his statement because officers did not give *Miranda* warnings.  Upon review, we conclude *Miranda* warnings were unnecessary because the defendant was not in custody when questioned by law enforcement, so the trial court erred when granting the defendant's motion to suppress on that basis.  Despite arguments by the defendant that he did not voluntarily give his statement because he was under the influence of prescription drugs, the trial court failed to make findings of fact in this regard.  Accordingly, we remand for full hearing and additional findings as to whether the defendant's statement was voluntary.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed;**
**Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; D. Mike Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellant, State of Tennessee.

Coleman Garrett, Memphis, Tennessee, for the appellee, Mark Harold Lullen, a.k.a Luellen.

## OPINION

### Facts and Procedural History

On April 20, 2015, Officer Eric Austin of the Moscow Police Department initiated a traffic stop of the defendant. The defendant became agitated during the stop and attempted to run Officer Austin over with his vehicle. Officer Austin fired his gun and shot the defendant on the right side of his chest. The defendant drove away and crashed into a light pole a short distance from Gurkin's convenience store. First responders were contacted and found the defendant unrestrained and sitting in the driver's seat of his car upon arrival. An ambulance subsequently transported the defendant to Regional One Health in Memphis for treatment, and the defendant underwent surgery later that day.

The Fayette County District Attorney requested that the Tennessee Bureau of Investigation ("TBI") investigate whether Officer Austin was justified in shooting the defendant, and Special Agent Ronnie Faulkner of the TBI was assigned to the matter. Agent Faulkner and Special Agent Ryan Fletcher, also with the TBI, went to the hospital around 10:30 a.m. on April 21, 2015, to interview the defendant. Upon arrival, the agents spoke with a nurse, who informed them the defendant was sleeping and directed them to his room.

The defendant was asleep when the agents entered his hospital room, and his brother, Michael Lullen, was present. As Agent Faulkner was in the process of identifying himself to Michael Lullen, the defendant woke up and began talking about the shooting. Agents Faulkner and Fletcher stopped the defendant and identified themselves as TBI agents, showed the defendant their credentials, explained they were present to interview him as part of their investigation of the shooting, and advised the defendant he did not have to speak with them. Agent Faulkner also told the defendant he was not under arrest or being charged with a crime by the TBI. Agent Faulkner did not Mirandize the defendant because he was merely present to gather information to be given to the district attorney, who would decide whether to bring charges against the defendant. There were not any officers present in the defendant's room to prevent him from leaving the hospital.

According to Agent Faulkner, the defendant was excited about being questioned by the TBI and wanted to tell his side of the story. As Agent Faulkner questioned the defendant, he wrote down his responses. The interview lasted approximately thirty minutes. At the conclusion of the interview, Agent Faulkner reviewed the statement line-by-line with the defendant, and the defendant signed it. Agent Faulkner believed the statement given by the defendant was consensual. He has been in law enforcement for twenty-eight years and has ample experience with intoxicated individuals. Based on this experience, Agent Faulkner did not believe the defendant was impaired at the time of the interview.

The defendant was later indicted for attempted second degree murder, two counts of aggravated assault, driving under the influence ("DUI"), and DUI per se for the incidents on April 20, 2015. The defendant filed a motion to suppress "all statements allegedly given by defendant to any and all law enforcement authorities," arguing "said statements were obtained in violation of the defendant's constitutional rights" and that "the officers failed to follow the mandate of *Miranda v. Arizona*." The defendant then filed an amended motion to suppress, arguing that his statements to the TBI agents were not voluntary, and the agents did not advise him of his *Miranda* rights. In response, the State asserted the defendant was not in custody at the time he gave the statement, and the statement was voluntary.

The trial court subsequently held a suppression hearing. The State called Agent Faulkner as a witness. In addition to explaining the circumstances surrounding the statement given by the defendant, Agent Faulkner read the statement into evidence, stating:

> I was driving about twenty to twenty-five miles per hour when I met the officer in the patrol car. The patrol car turned around and followed me and blue-lighted me. I turned into the parking lot at Gurkin's in Moscow. The officer told me that I was driving too slow. I told him that I didn't know you could drive too slow. I gave the officer my driver's license. The officer went to his car and then told me that I had a warrant when he came back to my car. I told him that I had just got out of jail. I told him that I had not did anything, that I wasn't going back to jail. I told him that we needed to talk things out. The officer had been talking to the lady at the store and the lady had gotten me a pack of cigarettes. I never got out of the car. The officer said that I was going to jail. I told him that I was tired of white folks taking darkies to jail. I wanted to see the warrant. I started my car up and told the officer I wasn't going to jail, that he was going to have to shoot me. I put my car in reverse and the officer tried to open my door. I took off backwards. The officer knew that I was backing up and he should get the hell out of the way. I backed up and started forward toward Grand Junction. When I started forward, the officer was in front of my car on the driver's side. The officer was in front of my car but I wasn't trying to run over him but I did see him in front of the car when I took off. The officer shot one or two times through my windshield. I felt something hit me and thought it was a Taser. I continued down the road but I couldn't see and I remember that I ran off the road and hit something. I had drank one can of beer at home before I left.

The State also called Justin Powers, a private investigator hired by the defendant's family to investigate the shooting, as a witness. Mr. Powers testified he was present at the hospital around 3:00 p.m. on April 21, 2015, and the defendant appeared disoriented. Mr. Powers, however, did not speak to the defendant until April 23, 2015. The State then exhibited the defendant's medical records from Regional One Heath and pointed out that while the records show the defendant was disoriented after his admission and surgery on April 20, 2015, by the end of the day he was alert. The defendant's medical records also show he was alert on April 21, 2015.

The defendant called his brother, Michael Lullen, to testify as his only witness. Mr. Lullen's testimony differed significantly from that of Officer Faulkner. Mr. Lullen stated he was at hospital with his brother at the time the TBI agents arrived. He saw Agents Faulkner and Fletcher walking down the hall and, even though they were not wearing uniforms, knew they were law enforcement officers because he could see guns and badges on their sides. After seeing them, Mr. Lullen immediately went into his brother's hospital room so he would be present when the officers spoke with him. Mr. Lullen testified that once the officers entered the room, he told them to leave because their attorney was not present, and the defendant was on powerful medication. One of the officers asked for a business card for the lawyer, but Mr. Lullen did not have one. Mr. Lullen claims his brother was "on his death bed," yet the officers repeatedly tried to wake him up by shaking his un-injured shoulder. While this was happening, Mr. Lullen said, "You need to leave and get a hold of our attorney." The officer then told him he was interfering with a police investigation and would be arrested if he didn't "chill out."

According to Mr. Lullen, prior to getting the statement, the agents never told the defendant he did not have to speak with him. The medication was too strong for the defendant, so he "couldn't answer questions and stuff." Mr. Lullen testified that he never saw his brother read the statement written by Agent Faulkner. Mr. Lullen denied telling Agent Faulkner his brother was coherent at the time the officers interviewed him.

Mr. Lullen testified that he lived with his brother, who had been mentally disabled since the Vietnam War. The defendant had most recently been hospitalized for his mental issues approximately one year prior to the shooting. Mr. Lullen was questioned extensively regarding the civil lawsuit filed by the defendant's family following the shooting. Mr. Lullen admitted to knowing about the lawsuit, but was evasive in response to most questions about the lawsuit, instead stating his sister was the family member involved with it.

At the conclusion of the suppression hearing, the trial court reserved ruling and later entered an order granting the motion. In its order, the trial court first found Mr. Lullen not to be a credible witness because he lived with the defendant and had an

interest in the civil lawsuit. In support of its decision to suppress the defendant's statement, the trial court then found:

> First, the Court finds the medical records indicate that the defendant was unable to sign certain documents needed as part of his medical care. Further, the Court finds the defendant was under the influence of prescription drugs which hampered his ability to understand the full nature of his actions on April 21, 2015. As a result, there is concern that any statements given by the defendant were not intelligently given.
>
> More importantly, this Court finds that the interview with the defendant by Agent Faulkner was primarily to determine the justification of the shooting by the police officer. But, the interview of the defendant also included questions about the entire event on the night of the shooting. Agent Faulkner testified that defendant Luellen "was not a suspect of the TBI" although Mr. Luellen was referred to as the "subject" in this hearing and the Moscow Police officer was referred to as the "victim." However, Agent Faulkner, as an agent for the State of Tennessee, knew or should have known that charges would likely be brought against Mr. Luellen and that Mr. Luellen was a suspect of the State and should have given the defendant his rights under *Miranda*. This Court cannot accept the distinguishment that a TBI agent in this situation can only consider his interview of the defendant for purposes of only considering whether or not the questions would only be used in the shooting investigation. The entire event on April 20, 2015 was being investigated at the time of the interview with the defendant, and the defendant should have been given his *Miranda* warnings. The statement of Mark Luellen given on April 21, 2015 should be suppressed.

The State sought and obtained the trial court's permission to apply for an interlocutory appeal to this Court. The State then filed an application with this Court under Rule 9 of the Tennessee Rules of Appellate Procedure, which this Court granted. This appeal followed.

### *Analysis*

On appeal, the State argues the trial court erred when suppressing the statement given by the defendant to the TBI because the defendant freely and voluntarily rendered the statement while not in custody. The defendant argues the trial court properly granted the motion because he was not free to go home and under the influence of prescription drugs at the time he gave the statement. Upon review, we conclude the defendant was

- 5 -

not in custody at the time he spoke with TBI agents, so the trial court erred when granting the motion to suppress on the basis the defendant should have been given *Miranda* warnings. With respect to the voluntariness of the statement, the trial court did not make any findings of fact or conclusions of law in this regard, so we remand this matter to the trial court for proceedings consistent with this opinion.

The standard of review applicable to suppression issues involves a mixed question of law and fact. *State v. Garcia*, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v. Cox*, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996) (internal quotation marks omitted). The Tennessee Supreme Court has explained this standard as follows:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

*Odom*, 928 S.W.2d at 23. However, the trial court's application of law to the facts, as a matter of law, is reviewed de novo, with no presumption of correctness. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

## I.    Custodial Interrogation

The Fifth Amendment to the United States Constitution, applicable to states through the Fourteenth Amendment, states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, the Tennessee Constitution states "that in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. If a suspect is in police custody "or otherwise [has been] deprived of his freedom of action in any significant way," the police must first inform him of his Fifth Amendment rights for any subsequent confession to later be admissible as substantive evidence. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In this regard, the United States Supreme Court has said, "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* These rights may be voluntarily, knowingly, and intelligently waived. *Id.*

The *Miranda* decision only applies "to the questioning of an individual who has been taken into custody or otherwise deprived of his freedom by the authorities in a significant way." *State v. Dailey*, 273 S.W. 3d 94, 102 (Tenn. 2009) (quoting *Miranda*, 384 U.S. at 478) (internal quotation marks omitted). Accordingly, *Miranda* warnings are only required when a suspect is (1) in custody and (2) subjected to questioning or its functional equivalent. *State v. Walton*, 41 S.W. 3d 75, 83 (Tenn. 2001). In the absence of either, *Miranda* requirements are not necessitated. *Id.*

The test for determining if an individual is in custody for *Miranda* purposes is "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996). This is a fact-specific inquiry, and our Supreme Court has provided the following non-exhaustive list of relevant factors:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt, and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Id.*

Here, the State argues the trial court erred when granting the defendant's motion to suppress because it wrongly relied on its finding the TBI agents should have known the State would bring charges against the defendant rather than considering whether the defendant was in custody at the time of questioning, thereby triggering the requirements of *Miranda*. In response, the defendant contends the trial court properly granted his motion to suppress because the defendant was incapacitated and hospitalized at the time of questioning, so not free to leave. Based on our review of the record and consideration of the *Anderson* factors, we agree with the State.

Agents Faulkner and Fletcher interviewed the defendant at 10:30 a.m. in his hospital room. The interview lasted approximately thirty minutes, and the defendant was so "excited to share his side of the story" that after waking, he immediately began

- 7 -

recounting the events leading to his hospitalization. The defendant was already in the hospital at the time the agents arrived and had been transported there the prior day by ambulance. There were two TBI agents present for the interview. The agents advised the defendant he was not under arrest, and they did not restrain him or otherwise prevent him from leaving the hospital room during questioning. There were not any officers in the defendant's hospital room to prevent him from leaving. The defendant willingly responded to the questions posed by the TBI agents despite being told he did not have to participate in the interview. Agent Faulkner believed the defendant understood what he was saying during the interview and testified during the suppression hearing that the defendant's brother confirmed the defendant understood his statements.

It does not matter for analysis of the defendant's *Miranda* claim that, due to his wound and subsequent surgery, the defendant might not be able to leave the hospital room unless a person or persons rolled his bed out of the room. That a police officer's shooting of the defendant is a link in the facts leading to the defendant's hospitalization in this case does not equal custodial interrogation. We make no conclusion, however, as to whether the limitations of the defendant's ability to be ambulatory affected the voluntariness of his statements to the TBI agents. We reserve ruling on that after it might be addressed on remand.

The trial court erred, as a matter of law, by suppressing the defendant's statement based on its finding the questioning agents should have known the State would eventually bring charges against the defendant. Law enforcement officers must only adhere to the requirements of *Miranda* when questioning an individual who is in custody. Whether the individual being questioned may also be the subject of a criminal investigation against whom the State will eventually bring charges is irrelevant. *See Anderson*, 937 S.W.2d at 851 (holding the "test to determine whether an individual is in custody for purposes of *Miranda* is objective from the viewpoint of the individual being questioned, and [the] unarticulated, subjective view of law enforcement officials that such individual is not a suspect is irrelevant.").

The evidence preponderates against the trial court's suppression of the defendant's statement. The trial court found the defendant's brother, Michael Lullen, not to be a credible witness, and we will not disturb this finding on appeal. Based on the evidence presented by the State during the suppression hearing, including the testimony of Agent Faulkner, *Miranda* warnings were not required because the defendant was neither in custody nor would a reasonable person in his position have considered himself deprived of freedom of movement to a degree associated with formal arrest. The State is entitled to relief under this theory.

## II.     Voluntariness of the Statement

Although we conclude the statement was not the result of a custodial interrogation, in order to be admissible, it must have been voluntarily given. *See Arizona v. Fulminate*, 499 U.S. 279, 286-88 (1991); *see also State v. Climer*, 400 S.W.3d 537, 568 (Tenn. Ct. App. 2013) (stating "the voluntariness test remains distinct from Miranda"). A confession is involuntary if it results from "'any sort of threats or violence, . . . any direct or implied promises, however slight, . . . [or] by the exertion of any improper influence.'" *State v. Smith*, 42 S.W.3d 101, 109 (Tenn. Crim. App. 2000) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). When evaluating the voluntariness of a statement, "the essential inquiry . . . is whether a suspect's will was overborne so as to render the confession a product of coercion." *Climer*, 400 S.W.3d at 568. A defendant's subjective perception alone is insufficient to support a finding that a confession was not voluntary. *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "coercive police activity is a necessary predicate to finding that a confession is not voluntary." *Id*.

When evaluating the voluntariness of a statement, courts consider the totality of the circumstances, including "characteristics of accused and details of the interrogation." *Climer*, 400 S.W.3d at 568. Relevant factors include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured[,] intoxicated[,] or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep[,] or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*Id*. "Before an accused is entitled to have his statement suppressed on the grounds that he was under the influence of alcohol and/or narcotic drugs, it must be established that the accused's faculties were so impaired that the statement could not be considered the product of a 'free mind and rational intellect.'" *State v. Bornfriend*, No. 02C01-9708-CC-00297, 1998 WL 641336, at *4 (Tenn. Crim. App. Sept. 21, 1998) (applying this standard to the influence of prescription medication on a defendant) (quoting *Vandergriff v. State*, 409 S.W.2d 370, 373 (Tenn. 1966)). The applicable test is "whether, at the time of the statement, the accused was capable of making a narrative of past events or of stating his own participation in the crime." *State v. Morris*, 24 S.W.3d 788, 805-06 (Tenn. 2000).

In the present matter, the State contends that while the trial court questioned the voluntariness of the defendant's statement, it granted the motion to suppress based solely on *Miranda* issues. Nevertheless, the State contends the evidence preponderates against a finding that the defendant's statement was involuntarily. In response, the defendant asks this Court to uphold the suppression order because, based on the totality of the circumstances, the defendant did not freely and voluntarily give the statement. We agree the trial court did not make any findings of facts or conclusions of law regarding the voluntariness of the defendant's statement and instead merely voiced concern that "the statements made by the defendant were not intelligently given." Accordingly, we remand this matter to the trial court for full hearing and additional findings of fact in this regard.

### *Conclusion*

Based upon the foregoing and the record as a whole, we reverse the judgment of the trial court regarding the necessity of *Miranda* warnings and remand this matter to the trial court for full hearing and additional findings of fact as to the voluntariness of the defendant's statement.

_____
J. ROSS DYER, JUDGE

- 10 -