IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 4, 2019 Session

## STATE OF TENNESSEE v. JOSEPH LESTER HAVEN

**Appeal from the Circuit Court for Obion County**
**No. CC-17-CR-89   Jeff Parham, Judge**

_____

## No. W2018-01204-CCA-R3-CD

_____


The Defendant, Joseph Lester Haven, was convicted pursuant to a bench trial of rape of a child and two counts of aggravated sexual battery for crimes committed against his stepchildren, and he received an effective forty-year sentence. On appeal, he asserts that the State failed to establish venue, that the evidence was insufficient to support the verdicts, that the State improperly failed to elect the factual bases of the convictions, that the trial court improperly considered evidence of other bad acts included in the forensic interviews, that the forensic interviewer was not qualified under statute, and that the trial court erred in applying enhancement factors to his offenses. Upon a review of the record, we conclude that the State failed to establish venue for the aggravated sexual battery conviction in Count 4, and we reverse this conviction and sentence and remand for any further proceedings. The Defendant has not demonstrated that he is entitled to any other appellate relief, and we affirm the remaining judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Joseph P. Atnip (on appeal), District Public Defender; and William K. Randolph (at trial), Assistant District Public Defender, for the appellant, Joseph Lester Haven.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Tommy A. Thomas, District Attorney General; and James T. Cannon (at trial) and Melinda Meador (at sentencing and motion for a new trial), Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

After the Defendant's seven-year-old stepson and nine-year-old stepdaughter disclosed that he had had sexual contact with them, the Defendant was charged with three counts of rape of a child committed against his stepson and one count of rape of a child and one count of aggravated sexual battery committed against his stepdaughter. Two of the counts charging rape of a child of the Defendant's stepson were dismissed prior to trial. The Defendant waived his right to trial by jury, and a bench trial ensued. At trial, the defense attempted to highlight inconsistencies in the statements and testimony given by the victims and attempted to show that the victims had prior emotional problems and prior sexual knowledge.

In a pretrial hearing, the Defendant sought to challenge the admissibility of the video recordings of the forensic interviews of the victims. Ms. Sydni Turner, the forensic interviewer who was employed by the Carl Perkins Center, a qualified child advocacy center, testified that she had been deemed to meet the statutory qualifications for a forensic interviewer in approximately ten prior court proceedings. Ms. Turner, who held a bachelor's degree in psychology, testified that at the time she conducted the interviews, she had been an interviewer at the center for one year and had "worked with the center on the various social work positions" for seven years. She had completed a minimum of forty hours of forensic training in interviewing traumatized children and an annual fifteen hours of continuing education. She had spent a minimum of eight hours interviewing under the supervision of a qualified forensic interviewer of children and had knowledge of child development through coursework, professional training, and experience. Ms. Turner had no criminal history and had actively participated in peer review. On cross-examination, she described the role of a forensic interviewer. She testified that while she would tell children that they were being observed through a video system, she did not inform them that the recorded interview could be used in later legal proceedings. She did not place children under oath during the interview but asked them to tell the truth.

The trial court found that Ms. Turner was qualified under the statute, noting that the court was "sitting here looking … step-by-step on the statute." The court observed that she had a bachelor's degree in psychology, a master's degree in social work, and that she had worked at the Carl Perkins Center for eight years, including one year as an interviewer. After mentioning the other statutory requirements, the court found that Ms. Turner qualified as a forensic interviewer under the statute. Defense counsel stated, "A forensic interviewer is not defined by that statute. I don't know exactly what that means. But, based on those things … we would pass the witness." The trial court stated that it had reviewed both interviews and found that they possessed particularized guarantees of

trustworthiness, taking into account the detailed responses of the victims and the circumstances of the interview.

Because the trial court had found that the interviews would be admissible if the victims were available for cross-examination, both parties at trial offered transcripts of the forensic interviews as an aid to the factfinder. Defense counsel observed that he had noted start and stop times on his "personal transcript" because the bulk of the video interviews concerned matters occurring outside the county. Defense counsel stated that the defense "would ask the Court to just consider the things just within those time stamps." The court observed that it had reviewed the videos in preparation for the pretrial hearing and that the videos contained material "[t]hat would be inadmissible as it pertains to this case, because it did not happen within Obion County. The Court is aware that the essential elements necessary to prove this case will have had to be proven within Obion County within the time frame." The trial court agreed that certain incidents noted by the defense did not occur within the county and further clarified:

THE COURT: So we're looking at, really, Spring Creek?
[DEFENSE COUNSEL]: Spring Valley.
THE COURT: Spring Valley?
[DEFENSE COUNSEL]: Yes, sir.
THE COURT: Okay. All right.

The Defendant's stepson was eight years old at the time of trial. The Defendant's stepson affirmed that he had recently reviewed the video, that he had signed the disk on which it was recorded, that the video was accurate, and that he had told the truth during the interview. The State introduced the video of the stepson's forensic interview, and the defense began to note certain time stamps at which the video referenced inadmissible evidence of other crimes, wrongs, or acts by the Defendant. The trial court responded, "[W]ell, instead of telling me these things, just cue it up to where you want it to be…." The parties attempted to reconcile different time indicators, and the defense indicated that the first ten minutes of the interview were admissible, as well as other portions. The record indicates, "Portion of video of interview of [stepson] played in open court." After further discussion attempting to reconcile the time stamps and an attempt to play a second video which recorded the same interview from a different camera angle, the record again indicates, "Portion of video of interview of [stepson] played in open court." The record further indicates that the parties discussed difficulty with the sound quality.[1] Defense counsel noted that the child had reviewed the video the previous day. Defense counsel

---

[1] In another part of the record, the trial court noted that forwarding through the video would not automatically forward the accompanying sound track.

requested to begin cross-examination regarding the video, noting that "the video is already in evidence."

During the interview, the Defendant's stepson stated that the Defendant had done "bad stuff," which he described as "N-U-T in butt." The Defendant's stepson elaborated that at his house on Spring Valley, he had been playing a video game during the day when the Defendant pulled him over by his hand and pulled his pants and underwear halfway down. The Defendant pulled his own pants and underwear down. He stated that he and the Defendant were lying on the couch and that he was on top of the Defendant. His sister was watching something on the computer in the living room with headphones and did not hear anything. The Defendant did "N-U-T in butt" by moving up and down.

On cross-examination at trial, the Defendant's stepson acknowledged having said that the Defendant had "halfway" pulled down the Defendant's stepson's pants and that the Defendant's own pants and underwear were pulled down. On further questioning, he stated his pants were at his waist but not pulled all the way up. He acknowledged saying they were on the couch and described lying in front of the Defendant. Asked to further describe their positions, he stated he could not and then agreed that he was talking about sitting in the Defendant's lap. On further questioning, he stated that he was not in the Defendant's lap but that the Defendant was lying down and had pulled him over to lie beside the Defendant. He stated his sister was watching television "[a]t the other side of the couch." She did not notice anything because the Defendant was under a blanket.

The Defendant's stepson agreed that the Defendant had previously punished him for being untruthful and stated he was punished through a "butt whooping" and was angry with the Defendant.

Ms. Turner testified at trial regarding her interview with the victims at the Carl Perkins Center. The Defendant's stepson referred to the Defendant's body part by spelling "N-U-T." A picture which the Defendant's stepson drew and labeled "n-u-t" was entered into evidence.

The Defendant's stepdaughter likewise testified that she had reviewed the video of her interview, that it was accurate, and that she told the truth during the interview. The trial court asked, "For the record, are we going to watch the whole DVD?" The prosecutor responded, "No, sir. I think we'll cut it off –" The record indicates that a portion of the interview was played, and the trial court noted "2:15[:]09[]… for the record." In a later discussion regarding a prior inconsistent statement, the trial court inquired if the proffered statement was inconsistent with "the limited portion of what was shown to me just now, which ended at 2:15[:]09 seconds?" After some testimony, the trial court stated for the record that a portion of the interview beginning at 2:33 and

ending at 2:36 would be played. These time stamps correspond to the Defendant's stepdaughter's statements regarding incidents of abuse in Spring Valley on the video.

In the February 8, 2017, interview, the Defendant's stepdaughter stated that she and her family had moved to Spring Valley in the city of Obion "a few months" prior to the interview but in the same school year. The Defendant's stepdaughter said that the Defendant "puts his body parts, his private parts in my butt." She said that one time, she went into her mother's bedroom and the Defendant grabbed her and pulled her pants down and put "his private part in my butt," which "hurted." She described the Defendant's private part. She stated that the Defendant held on to her hips and that she could "feel his hair touching [her] butt." She also stated that during this incident, he touched her breasts on top of her nightclothes. She stated the Defendant was unclothed and that she kicked the Defendant and got away. This incident occurred during Christmas break. She said she then saw the Defendant do the same thing to her brother, "humping him," and that this occurred "next to [her]." She also told the interviewer that on another occasion, on Spring Valley, the Defendant "touch [her] pee pee" with his hands under her clothes "like this," and that he was "rubbing it with my clothes on."

The Defendant's stepdaughter, who was ten years old at the time of trial, testified that the Defendant anally penetrated her and that he was not wearing clothing. She then testified both that she was and was not wearing clothing. She agreed that she had previously testified she was wearing clothes and explained the discrepancy by saying, "Because there's more than one." She agreed, however, that "there was only one time at Spring Valley." She recalled previously testifying that her pajama pants were up around her waist and she recalled stating she did not know how the Defendant penetrated her if her pants were still up. Responding to the trial court's questions, she clarified that she was wearing pajama bottoms and that the Defendant did not remove them or pull them down. On redirect examination, the Defendant's stepdaughter agreed she had stated during the forensic interview that the Defendant "put his private parts in [her] butt," but she clarified that the Defendant did not penetrate her at the Spring Valley location but at other locations. She said that on Spring Valley, the Defendant attempted to penetrate her.

The Defendant's stepdaughter also testified that she saw something happen between the Defendant and her brother. Asked if she had witnessed anything take place between the Defendant and her brother on the couch, she said she had not. The Defendant's stepdaughter acknowledged that she had attempted suicide by jumping head-first off of a balcony, but she denied that her imaginary friend was involved in the incident and denied she had an imaginary friend. She then acknowledged that she had previously testified that her imaginary friend told her to jump, and she recalled that her imaginary friend was "Beth" but that her "real friend actually told [her] that no one is there." The Defendant's stepdaughter affirmed that she said during her interview that the

- 5 -

Defendant penetrated her anally and that she "could feel his hairs," and she agreed that she made that statement about another stepfather. She then denied that her other stepfather ever raped her, clarifying that she thought defense counsel's question was about the Defendant.

The Defendant's stepdaughter acknowledged that the Defendant spanked her and that she was angry with him for doing so. She denied having threatened to accuse the Defendant's mother or father of inappropriately touching her.

The parties stipulated to the contents of a medical report made by Dr. Lisa Piercey, who examined the victims on February 20, 2017. Dr. Piercey's report summarized that the Defendant's stepdaughter reported that the Defendant began touching her inappropriately when she was five years old and lived in Georgia. She told Dr. Piercey that the Defendant made her touch his "pee-pee" and also touched her "pee-pee." She stated that the Defendant began to watch "videos of people putting their privates in butts" after the family moved to California and that "that's what he did to me." She stated that after the family moved to Tennessee, the Defendant penetrated her once anally and once vaginally in Dyersburg and once anally "on Spring Valley." She stated that she told him to stop and that he responded, "just a little bit more," and she described cleaning up "the white stuff" afterwards. She told Dr. Piercey that she "saw him do it to [her] brother once ... he was holding my brother down and doing this like (thrusts hips) with his ([the Defendant's]) pee-pee close to his ([her brother's]) butt." The Defendant's stepdaughter told Dr. Piercey that no one else had sexually abused her. Dr. Piercey found no trauma and concluded that her assessment was "[c]hild sexual abuse," noting that "[t]he finding of no acute trauma or residua of trauma is to be expected, given the child's description of the events and length of time since the last episode."

Dr. Piercey's report summarized the Defendant's stepson's allegations that the Defendant "touched my 'P' with his hand once and then touched my butt with his 'P', a bunch of times." The Defendant's stepson stated that the touching had occurred once or twice out of the state, one time in Dyersburg, and three times "where we live now." The Defendant's stepson stated that the Defendant had put lotion called "Your Own Body" on his penis prior to penetration. The Defendant's stepson told Dr. Piercey that two other people, one in Tennessee and one in California, had sexually abused him, but stated, "I don't want to tell you about those." Dr. Piercey again concluded that her assessment was "[c]hild sexual abuse" and noted that "[t]he finding of no acute trauma or residua of trauma is to be expected, given the child's description of the events and length of time since the last episode."

The Defendant presented the testimony of Ms. Tina Haven, the Defendant's mother. Ms. Haven worked with the victims' mother at a fabric store in 2011. The

Defendant met the victims' mother, who was at the time married to another man, through Ms. Haven in 2013. Ms. Haven testified that in 2013, she was in the victims' home when the Defendant's stepdaughter asked for some snack cakes from the counter. The victims' mother was in the bathroom, and Ms. Haven told the Defendant's stepdaughter that she could not have the cakes. The Defendant's stepdaughter told Ms. Haven, "[I]f you don't give me those snack cakes I'm going to tell … everybody that you touched me." Ms. Haven elaborated that the Defendant's stepdaughter intended to tell others that Ms. Haven "had put my fingers into her pee-pee and grabbed her – and grabbed her breasts." The victims' mother "laughed it off" when Ms. Haven told her what had happened.

Ms. Haven testified that the Defendant's stepdaughter made such threats on numerous occasions. At Ms. Haven's granddaughter's fourth birthday party, Ms. Haven noticed that the Defendant's stepdaughter was not outside with the guests. She went into the home where the presents had been taken, and she heard the Defendant's stepdaughter threaten to "tell everybody [the Defendant's father] touched" her unless he permitted her to play with one of the presents. The victims' mother was told about the incident and said to the child, "[W]hat did I tell you about doing that[?] … [O]nly with something big." Mr. Joseph Haven, Sr., the Defendant's father, gave testimony confirming this incident.

Ms. Haven further testified about an instance during which the Defendant's stepdaughter was watching pornography. Ms. Haven was dropping her granddaughter off in the early morning hours for the victims' mother to babysit, and the Defendant's stepdaughter was awake and watching pornography, asserting that her mother permitted her to watch it whenever she wanted.

The Defendant testified and denied any inappropriate contact with either of the victims. He testified that he had been a cyber network operator in the Marine Corps prior to his general discharge under honorable conditions after conflicts with a superior officer. He worked for the victims' mother as a nanny before she divorced her husband and married the Defendant. He also had physical custody of a daughter who was born when he was sixteen, but his parents obtained guardianship of her when he went into the Marines. He and the victims' mother were married and lived in California, then moved to Dyersburg.

The Defendant testified that both victims had behavioral problems that predated his acquaintance with the family. His stepson was sent home multiple times with letters detailing misbehavior including hitting teachers, hitting the bus driver, and throwing things. His stepdaughter was suicidal, and the school alerted the parents to repeated instances of self-harm. He testified that he and the victims' mother had a difficult relationship in part because he attempted to introduce discipline into the household. He

said that the victims' mother had threatened to shoot him with a handgun she kept in a safe.

The Defendant speculated that his stepson accused him of rape at the victims' mother's prompting and because she had promised him the reward of an Xbox. He related an incident in which his stepson and a preteen child had watched pornography on his stepson's telephone in a closet. About a month later, the victims' mother told the Defendant that someone else had accused the preteen of sexual misconduct with a younger child. They decided to question the stepson, and he stated that the preteen had put his "N-U-T" into the Defendant's stepson's "butt." The Defendant explained that "N-U-T" was his stepson's word for penis.

The Defendant believed that his stepdaughter accused him of sexual misconduct because she disliked him. He elaborated that if she threw a tantrum, he would give her a "butt whooping," explaining, "if you want to hurt yourself, let me help." The Defendant acknowledged that he had two non-judicial punishments in the military.

The trial court recessed to deliberate on the evidence and found the Defendant guilty of the rape of his stepson. Regarding the count charging the rape of the Defendant's stepdaughter, the State agreed that a finding of penetration was not supported by the record. The trial court acquitted the Defendant of the offense and of the lesser-included offense of attempted rape of a child. The trial court found the Defendant guilty of the lesser-included offense of aggravated sexual battery based on his stepdaughter's assertion in the forensic interview that the Defendant grabbed her breast area. The trial court found the Defendant guilty of an additional count of aggravated sexual battery based on his stepdaughter's statement in the recording that the Defendant touched her vaginal area over her clothing on Spring Valley.

At sentencing, the victims' mother testified that the Defendant's stepdaughter was severely depressed and had suicidal tendencies as a result of the abuse, resulting in hospitalization for her mental health. The Defendant's stepson was angry and felt betrayed. She testified that she had trouble trusting babysitters with the victims or allowing the victims to go anywhere. She acknowledged that she had received $3,000 from the State of Tennessee in a victims' fund. The prosecutor noted that the discharge papers introduced into evidence reflected that the Defendant's service was "general under honorable conditions" but the reason for separation was a "pattern of misconduct."

The trial court applied as enhancement that the offense involved more than one victim, that the victims were particularly vulnerable due to age, and that the offenses were committed to gratify the Defendant's desire for pleasure and excitement. *See* T.C.A. § 40-35-114(3), (4), (7). The trial court found no mitigating factors. The trial

court noted that the Defendant's stepson appeared extremely credible in his testimony. The trial court found that the Defendant was convicted of multiple offenses involving the sexual abuse of a minor and noted the circumstances were aggravated due to the relationship of the Defendant and the victims. *See* T.C.A. § 40-35-115(b)(5). The trial court sentenced the Defendant to serve thirty years with a one hundred percent release eligibility date for the rape of a child conviction. The trial court sentenced the Defendant to serve ten years for each aggravated battery conviction, to be served concurrently with one another and consecutively to the rape of a child conviction, for an effective sentence of forty years.

The Defendant filed a motion for a new trial. Among other issues, he argued that the evidence was insufficient to support the verdict, that the State did not elect a particular date for the offenses, that the forensic interviews should not have been admitted into evidence and should now be redacted, and that the trial court misapplied enhancement factors. The motion for a new trial was denied, and the Defendant appeals.

## ANALYSIS

### I. Venue

The Defendant asserts that the State failed to prove venue by a preponderance of the evidence. The State asserts that the Defendant waived the issue by failing to object at trial, that the location was subject to judicial notice, and that the Defendant essentially stipulated venue. We conclude that the State presented evidence sufficient to establish venue by a preponderance of the evidence for the conviction of rape of a child and the conviction of aggravated sexual battery based on the Defendant's touching his stepdaughter's vaginal area. Because there was nothing in the record to establish venue for the aggravated sexual battery conviction based on the Defendant's touching his stepdaughter's breast area in Count 4, that conviction is reversed.

The accused has the right to be tried by an impartial jury in the county in which the crime was committed. Tenn. Const. art. I, § 9; Tenn. R. Crim. P. 18(a). Although venue is jurisdictional, it is subject to waiver in certain circumstances. *Ellis v. Carlton*, 986 S.W.2d 600, 601-02 (Tenn. Crim. App. 1998) (a motion for change of venue, consenting to trial in another county, failing to stand on a motion for judgment of acquittal in conjunction with a failure to cite to the record, and entering a guilty plea could constitute waiver of venue). However, proceeding to trial on the merits of a case does not, in itself, amount to waiver. *State v. Anderson*, 985 S.W.2d 9, 14-15 (Tenn. Crim. App. 1997) (citing *Clariday v. State*, 552 S.W.2d 759, 770 (Tenn. Crim. App. 1976)). The State bears the burden of proving venue by a preponderance of the evidence, and slight evidence is enough to carry the burden if it is uncontradicted. *Ellis*, 986

S.W.2d at 602. Venue may be established by direct or circumstantial evidence and is a question for the finder of fact, who may draw reasonable inferences from the evidence. *State v. Trusty*, 326 S.W.3d 582, 597 (Tenn. Crim. App. 2010) (citing *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006)).

Although the Defendant did not raise the issue of venue in his motion for a new trial, a motion for a new trial is not required when the Defendant has elected to proceed with a bench trial. *State v. Norman Eugene Banks*, No. M2008-01823-CCA-R3-CD, 2010 WL 2943115, at *3 (Tenn. Crim. App. July 26, 2010) (noting that a motion for a new trial was not required in a bench trial). The Defendant also did not object to the issue of venue at trial. In *State v. Anderson*, this court concluded that the Defendant's failure to object to venue at trial did not amount to waiver of venue. 985 S.W.2d at 15. Likewise, in *State v. Martinos Derring*, this court observed that "a defendant is not required to raise the issue of venue prior to trial" or "to raise the issue of venue in the motion for new trial to preserve the issue for appeal." No. W2017-02290-CCA-R3-CD, 2019 WL 244471, at *3 (Tenn. Crim. App. Jan. 16, 2019), *perm. app. denied* (Tenn. May 17, 2019) (citing *Anderson*, 985 S.W.2d at 15). The court in *Martinos Derring* noted that a jurisdictional failing may be addressed at any time during the pendency of the case. *Id.* (citing Tenn. R. Crim. P. 12(b)(2)); *see State v. Turner*, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995) (noting that the issue of venue was waived for failure to cite to the record and for failure to raise the issue below, but concluding that because venue was jurisdictional and because the court was required to determine jurisdiction, the issue would be considered on the merits); *but see State v. Kenneth Fleming*, No. W2016-01017-CCA-R3-CD, 2018 WL 1762208, at *6 (Tenn. Crim. App. Apr. 12, 2018) (concluding that the defendant waived venue issue by failure to raise it in the motion for a new trial and by couching the issue in terms of a sufficiency of the evidence argument); *State v. Wayne Boykin*, No. W2010-00719-CCA-R3-CD, 2011 WL 4449671, at *7 (Tenn. Crim. App. Sept. 26, 2011) (same). We conclude that we cannot distinguish *Anderson*, a reported opinion, and that the Defendant's claim is not waived. Tenn. S. Ct. R. 4(G)(2) ("Opinions reported in the official reporter, however, shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.").

In *Martinos Derring*, the evidence of the location of the offense included street names, the intersections where the crimes took place, the fact that the responding authorities included the Memphis Police Department and Memphis Housing Authority, and an officer's testimony that the crime occurred within his precinct. 2019 WL 244471, at *4. Observing that "[t]his court has previously interpreted Tennessee Rule of Evidence 201 to permit a jury, whether requested or not, to notice facts 'generally known within the territorial jurisdiction of the trial court,'" the panel in *Martinos Derring* concluded that the evidence was sufficient for the jury to infer that the crime occurred in the county.

*Id.* (quoting *State v. Ellis*, 89 S.W.3d 584, 598 (Tenn. Crim. App. 2000)). Likewise, in *State v. Ellis*, the evidence included the street address of the crimes, the fact that they occurred in the city of Gallatin, and documents reflecting that the Sumner County Chancery Court was located in Gallatin. 89 S.W.3d at 598. Noting that under Tennessee Rule of Evidence 201, the jury, whether requested or not, could infer facts generally known within the territorial jurisdiction of the trial court, this court concluded that venue in the county was sufficiently established. *Id.*; *see State v. Chris Smith*, No. 03C01-9807-CR-00259, 1999 WL 619042, at * 2 (Tenn. Crim. App. Aug. 17, 1999) (concluding that evidence regarding the city in which the crimes took place could allow the jury to determine the county of the offense); *State v. Jerry Walden*, No. 03C01-9409-CR-00330, 1995 WL 506036, at *3 (Tenn. Crim. App. Aug. 24, 1995) ("Thus, the jury (citizens of Campbell County) could take notice of the location of one of the largest cities in the county."); *but see State v. Morrieo Allen*, No. W2018-01339-CCA-R3-CD, 2020 WL 883126, at *4 (Tenn. Crim. App. Feb. 21, 2020), *perm. app. filed* (Apr. 21, 2020); *State v. Young*, 617 S.W.2d 661, 663 (Tenn. Crim. App. 1981) (the court could not take judicial notice of the county in which a city was located when the city spanned two counties).

In the case at bar, prior to the introduction of the forensic interviews, the Defendant asked the trial court to limit its consideration to the sections of the interviews that related to offenses occurring within the county. In response, the trial court noted that the victims mentioned inadmissible incidents occurring in Dyersburg and Yorkville, and the trial court noted that it was aware that it could only consider events that occurred in Obion County. The trial court clarified with defense counsel, "So we're looking at, really, Spring Creek?" Defense counsel responded, "Spring Valley." The Defendant's stepson stated during the interview that the Defendant interrupted his video game and raped him on the couch when he was seven years old at his house on Spring Valley.[2] The Defendant's stepdaughter told the interviewer that she and her family lived on Spring Valley in the city of Obion, and she named the elementary school she attended. She stated that one time on Spring Valley, the Defendant "touched [her] pee pee" by rubbing it. Ms. Turner testified that some of the allegations took place in Obion County. We conclude that the evidence regarding the location of these offenses, evidence which included testimony about the street address where the offenses occurred, and the city in which they occurred, the school the victims attended, was sufficient to allow the factfinder to infer, pursuant to facts generally known within the territorial jurisdiction, that the offenses occurred in Obion County, and indeed, counsel agreed at trial that the Spring Valley address was located within the county. *See Martinos Derring*, 2019 WL 244471, at *4 (citing Tennessee Rule of Evidence 201).

---

[2] The Defendant's speculation that his stepson's testimony regarding the rape on Spring Valley might refer to another Spring Valley in Weakley County, where he contends the forensic interviews took place, has no support in the record. We note that there is no evidence in the record regarding the location of the interviews.

The remaining count of aggravated sexual battery was based on an incident which the Defendant's stepdaughter described during the interview. During the interview, she stated that the Defendant put his "private part in [her] butt" when she was on Christmas break "a couple of months" prior to the interview. She explicitly described being penetrated. She told the interviewer that during this assault, the Defendant also touched her breasts. She did not state during the interview that the assault took place at the Spring Valley address. At trial, her testimony was that the Defendant did not put "his privates into [her] butt" on Spring Valley. She clarified that there were other occasions when the Defendant penetrated her but that her statements about the rape in the interview concerned an event "[t]hat wasn't when we were in Spring Valley." The trial court acquitted the Defendant of rape of a child regarding this incident but convicted him of aggravated sexual battery for touching his stepdaughter's breasts during the assault. We conclude that while the record contains evidence from which it could be inferred that the offenses at the Spring Valley home occurred in Obion County, the record does not support the conclusion that the touching that was the basis of this conviction occurred at the Spring Valley home. The Defendant's stepdaughter's testimony at trial clarified that the incident she had described, which formed the basis of the charge, occurred elsewhere. We conclude that venue was not established by a preponderance of the evidence as to this conviction, and we accordingly reverse the conviction. *See State v. Hutcherson*, 790 S.W.2d 532, 535 (Tenn. 1990) (remanding for a retrial after failure to prove venue because venue did not constitute an element of the offense but was necessary only to establish jurisdiction); *State v. Gene Allan Logue*, No. W1999-01795-CCA-R3-CD, 2000 WL 1843248, at *3 (Tenn. Crim. App. Dec. 15, 2000).

## II. Sufficiency of the Evidence

The Defendant also challenges the sufficiency of the evidence, arguing that the testimony of the stepchildren was not credible, that their testimony was not consistent, and that the trier of fact could not have found the elements of the offense beyond a reasonable doubt in the absence of medical proof. We conclude that the evidence is sufficient to support the verdicts.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty

verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277.

Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7).

Aggravated sexual battery, as it relates to the Defendant's convictions, is "unlawful sexual contact with a victim by the defendant" when the victim is less than thirteen years old. T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). Intimate parts include "the primary genital area, groin, inner thigh, buttock or breast." T.C.A. § 39-13-501(2). Whether the contact is for the purpose of sexual arousal or gratification is a question of fact for the factfinder to determine. *State v. Creed Gettys Welch*, No. M2016-01335-CCA-R3-CD, 2019 WL 495117, at *5 (Tenn. Crim. App. Feb. 8, 2019), *no perm. app. filed* (citing cases); *see State v. Clark*, 452 S.W.3d 268, 298 (Tenn. 2014).

The Defendant's stepson stated that when they lived on Spring Valley, the Defendant interrupted his video game, partially removed their clothing, and made him lie on the couch. The Defendant's stepson stated that the Defendant then did "N-U-T in butt" while the Defendant was moving up and down. The Defendant testified that "N-U-T" was his stepson's word for penis, and a drawing made by the Defendant's stepson to define "N-U-T" was introduced. *See State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001) (noting that penetration is a question of fact and concluding that the factfinder "obviously resolved the inconsistencies in the State's favor and concluded that [the defendant's] acts involved invasion of the genital opening."). The Defendant's stepdaughter stated that one

time in Spring Valley, the Defendant rubbed her "pee-pee" under her clothes while her clothes were on. While we have reversed Count 4 for failure to prove venue, the Defendant's stepdaughter also stated in the interview that the Defendant grabbed her breasts when he penetrated her. We conclude that the evidence is sufficient to establish the elements of the offenses.

To attack his stepdaughter's credibility, the Defendant points to the testimony of Ms. Haven and Mr. Haven, Sr., that the Defendant's stepdaughter had threatened to make prior false accusations of sexual abuse and had been exposed to pornography. Regarding his stepson's accusations, he points to evidence that his stepson was exposed to pornography, and he highlights evidence from an offer of proof that a preteen child had abused his stepson. However, this court does not reweigh the credibility of witnesses. *Smith*, 436 S.W.3d at 764. The trial court heard all of the evidence at trial and made a credibility determination in favor of the victims, and this court will not substitute its judgment for that of the trier of fact. *Id.*

The Defendant also points to his stepdaughter's inconsistent testimony regarding the role of her imaginary friend, regarding whether she was clothed, and regarding whether she was penetrated at the Spring Valley address. He argues that his stepson's testimony was inconsistent because he stated alternatively that his sister was on the computer or watching television. The Defendant likewise notes his stepson's difficulty in describing how the two were lying on the couch, and he asserts that it is not believable that his stepdaughter could have been watching television in close proximity to the rape without noticing it. However, inconsistent testimony may only be the basis for overturning a verdict when "inaccuracies or inconsistencies … 'are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt.'" *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (quoting *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)). Here, the trial court acquitted the Defendant of the rape of his stepdaughter but chose to credit the victims' testimony regarding the other offenses. The inconsistencies were not so improbable or unsatisfactory as to create reasonable doubt as a matter of law.

The Defendant also argues that the lack of medical proof undermined the sufficiency of the evidence. The doctor who examined the victims found no evidence of trauma but concluded that her findings were "to be expected" due to the elapsed time between the abuse and the examination. The Defendant complains that the doctor's assessment of "child sexual abuse" was not supported by the physical evidence. However, the trial court was aware that there were no medical findings to corroborate the testimony. The absence of physical evidence does not require overturning the verdict because "there is no requirement that the victim's testimony be corroborated." *State v.*

*Smith*, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000). We conclude that the evidence is sufficient to support the verdicts.

### III. Election

The Defendant next asserts that the State presented evidence of multiple offenses and failed to elect the offenses on which it would proceed. The State responds that this claim is waived and that the Defendant is not entitled to plain error relief. We agree that this issue has been waived and that the Defendant is not entitled to relief.

"The election doctrine refers to the prosecutor's duty in a case where evidence of multiple separate incidents is introduced to elect for each count charged the specific incident on which the jury should deliberate to determine the defendant's guilt." *State v. Qualls*, 482 S.W.3d 1, 9 (Tenn. 2016). The requirement of election ensures that the defendant is able to defend against a particular charge, protects a defendant against multiple prosecutions for the same offense, and enables the appellate court to determine the sufficiency of the evidence. *State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). However, "[t]he primary purpose for the election requirement is to ensure that the jury is deliberating about a single instance of alleged criminal conduct so that the jury may reach a unanimous verdict." *State v. Smith*, 492 S.W.3d 224, 236 (Tenn. 2016).

The Defendant did not argue prior to appeal that the State was required to make an election based on the introduction of evidence of more than one offense. We conclude that the issue is waived. *See id.* at 232; *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015). While "errors pertaining to the sufficiency of the prosecution's election are subject to plain error review," the Defendant here has not requested plain error review. *Id.* at 424 (concluding the defendant was not entitled to plain error relief when the State provided an inaccurate election regarding the type of penetration); *see Smith*, 492 S.W.3d at 239 (concluding that the defendant was entitled to plain error relief); *State v. Kendrick*, 38 S.W.3d 566, 569 (Tenn. 2001) (noting that the court has "stressed that the election requirement is a responsibility of the trial court and the prosecution and, therefore, does not depend on a specific request by a defendant").

In any event, the Defendant would not be able to show that a clear and unequivocal rule of law was breached or his substantial rights violated. *See State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). Because the Defendant elected to proceed with a bench trial, he cannot claim that his constitutional right to a unanimous jury verdict was violated. *See* Tenn. Const. art I, § 6; *State v. Lemacks*, 996 S.W.2d 166, 169-70 (Tenn. 1999). Insofar as the Defendant asserts that his convictions do not provide him with protection from future prosecution because it is unclear which event is the basis for each conviction, the record contradicts his assertion. The State only offered proof of one rape

of the Defendant's stepson that occurred in Spring Valley. Accordingly, the State was not required to make an election regarding this offense. *Adams*, 24 S.W.3d at 294 ("When the evidence does not establish that multiple offenses have been committed, however, the need to make an election never arises."). In rendering its ruling, the trial court clearly identified the factual bases for the two convictions for aggravated sexual battery: the Defendant's touching of his stepdaughter's breasts on one occasion and his touching of her vaginal area on another occasion. The Defendant is not entitled to relief.

## IV. Admissibility of the Forensic Interviews

The Defendant asserts that the forensic interviews were improperly admitted because they contained inadmissible evidence of other crimes, wrongs, or bad acts and because the State failed to show that the forensic interviewer was qualified under statute. We conclude that both issues are waived and that the Defendant is not entitled to relief.

## A. Record on Appeal

Initially, we note the Defendant asserts that this court cannot consider the forensic interviews as evidence on appeal because the record is not clear regarding which portions of the interviews were actually played during the victims' testimony at trial. The trial transcript reflects that the videos were entered as exhibits in their entirety and that the trial court agreed with defense counsel that the court would only consider the portions of the videos describing events occurring within the county. The transcript reflects that portions of the interview with the Defendant's stepson were played. Defense counsel requested to cross-examine the Defendant's stepson without viewing the entire forensic interview due to technical difficulties. The transcript also reflects that a portion of the interview of the Defendant's stepdaughter was played up to the 2:15:09 time stamp and that a subsequent portion, from 2:33 to 2:36 on the time stamp, was played later.

The Defendant filed a motion in this court to "correct or modify" the record, asserting that the videos of the forensic interviews, which were admitted as exhibits in their entirety, should essentially be stricken from the record because the transcripts did not reflect which exact portions were played at trial and because the court reporter was unable to hear the audio on her recordings in order to clarify what was admitted into evidence. This court remanded the matter for the trial court for a determination of what was properly includable in the record. On remand, the trial court filed an order noting that, prior to the bench trial, it had reviewed the videos in their entirety as part of a pretrial motion hearing. The trial court found that the Defendant challenged the admissibility of some statements on the videos and that it was "determined that the Court would consider only the relevant portions," or events which occurred within the county.

The order further stated, "The Court finds all of the videos were played at the Trial and such were entered with agreement to only consider" the relevant portions.

The Defendant did not request a redaction of the videos at trial and instead acquiesced in the suggestion that the trial court, which had already reviewed the videos in their entirety, would only consider the relevant portions in making its factual findings. The videos were admitted as exhibits in their entirety. We conclude that the Defendant cannot now claim that the video evidence is not part of the record before us. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").[3]  Accordingly, we decline his invitation to exclude the evidence from our consideration.

### B. Tennessee Rule of Evidence 404(b)

The Defendant asserts that the trial court, sitting as the trier of fact, heard allegations of misconduct which occurred outside the county, and that this entitles him to a new trial. He argues that the trial court's order on remand indicates that it viewed the entirety of the videos despite having determined that the portions of the videos were inadmissible. He notes that the trial court did not comply with Tennessee Rule of Evidence 404(b) in holding a hearing and determining which portions of the interview would be admissible, and he speculates that the trial court may have considered some of the evidence of events happening outside the county in rendering its decision. We conclude that the Defendant received a favorable ruling on the 404(b) issue and that any other challenge on these grounds is waived.

We observe that the Defendant challenged the evidence related to events in locations other than Obion County and that the trial court ruled that such evidence would be inadmissible under Rule 404(b). The Defendant's argument is not based on the trial court's ruling under Rule 404(b), a ruling which was in fact favorable to him, but instead is based on speculation that the trial judge, who had already seen the videos in their entirety in a pretrial hearing, considered the entirety of the videos in his role as factfinder at trial. However, the Defendant did not raise this issue below, instead acquiescing in the trial court's determination that the court would only consider the events occurring in the county.

---

[3] We note that, while the statute requires a protective order preventing disclosure or dissemination of the videos, preventing them from becoming public record, and requiring that they be sealed following the conclusion of the criminal proceedings, the Defendant's contention that the trial court failed to comply with these statutory requirements would not entitle him to relief on his conviction, nor would it remove the videos from our consideration. *See* T.C.A. § 24-7-123(e).

At trial, defense counsel told the court that he had made note of time stamps of the relevant events, and that the Defendant "would ask the Court to just consider the things just within those time stamps." The defense submitted as an aid to the trial court a transcription of the interviews in their entirety. The trial court, noting that it had reviewed the entire video in a pretrial hearing, observed that any event outside the county "would be inadmissible as it pertains to this case, because it did not happen within Obion County. The Court is aware that the essential elements necessary to prove this case will have had to be proven within Obion County within the time frame." The Defendant agreed and noted that certain testimony about "Pickle Street" fell outside the county. The trial court clarified:

> THE COURT: So we're looking at, really, Spring Creek?
> [DEFENSE COUNSEL]: Spring Valley.
> THE COURT: Spring Valley?
> [DEFENSE COUNSEL]: Yes, sir.
> THE COURT: Okay. All right.

During trial, the Defendant wished to cross-examine his stepson regarding the interview and attempted to list the time stamps for the court, which requested the defense to simply play the pertinent parts. Because defense counsel encountered technical difficulties, defense counsel requested the court to allow him to cross-examine the witness after having played portions of the video. The record likewise indicates that only portions of the video interview of the Defendant's stepdaughter were played. The record reflects that the Defendant requested the court to only consider the acts that were pertinent to the charged crimes and that he acquiesced in the trial court's determination that, despite having viewed the videos prior to trial, it would only consider the allegations in Obion County. The defense submitted, as an aid to the trial court, transcripts of the interviews which included the inadmissible material. The Defendant cannot complain for the first time on appeal that the trial court might have been influenced by the inadmissible portions of the videos. *See* Tenn. R. App. P. 36(a); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). This issue is waived.

The Defendant also objects to the fact that the videos were admitted into evidence unredacted. This issue is likewise waived. The prosecution moved the videos of the interviews into evidence without objection. Due to technical difficulties playing one video in preparation to cross-examine the Defendant's stepson, defense counsel asked, "Well, can't I just ask him questions about what -- I mean, the video is already in evidence." The Defendant never requested the interviews to be redacted for the purposes of trial, and he never offered redacted versions of the interviews to be put into evidence.

- 18 -

Accordingly, he has waived any objection to the interviews being made exhibits in their entirety.  *See* Tenn. R. App. P. 36(a).

### C. Admissibility of the Interviews Under Statute

The Defendant also asserts that the interviews themselves were inadmissible because Ms. Turner did not meet the statutory requirements for a forensic interviewer. We agree with the State that this argument is waived because it cannot be raised for the first time on appeal.

Tennessee Code Annotated section 24-7-123 governs the admissibility of forensic interviews at trial.   The statute allows the interview to be admitted as substantive evidence if:  the child affirms under oath that the video is a true and correct recording and the child is available for cross-examination; the video "is shown to the reasonable satisfaction of the court, in a hearing conducted pretrial, to possess particularized guarantees of trustworthiness"; the interview was conducted by a forensic interviewer meeting certain requirements; the interview is recorded audio and visual content; the entire interview is recorded and the recording is unaltered and accurately reflects the interview; and every voice heard on the recording is identified.  T.C.A. § 24-7-123(b)(1)-(6).  The requirements for the interviewer are that the interviewer:

> (A) Was employed by a child advocacy center that meets the requirements of § 9-4-213(a) or (b); provided, however, that an interview shall not be inadmissible solely because the interviewer is employed by a child advocacy center that:
>> (i) Is not a nonprofit corporation, if the child advocacy center is accredited by a nationally recognized accrediting agency; or
>> (ii) Employs an executive director who does not meet the criteria of § 9-4-213(a)(2), if the executive director is supervised by a publicly elected official;
> (B) Had graduated from an accredited college or university with a bachelor's degree in a field related to social service, education, criminal justice, nursing, psychology or other similar profession;
> (C) Had experience equivalent to three (3) years of fulltime professional work in one (1) or a combination of the following areas:
>> (i) Child protective services;
>> (ii) Criminal justice;
>> (iii) Clinical evaluation;
>> (iv) Counseling; or
>> (v) Forensic interviewing or other comparable work with children;

(D) Had completed a minimum of forty (40) hours of forensic training in interviewing traumatized children and fifteen (15) hours of continuing education annually;

(E) Had completed a minimum of eight (8) hours of interviewing under the supervision of a qualified forensic interviewer of children;

(F) Had knowledge of child development through coursework, professional training or experience;

(G) Had no criminal history as determined through a criminal records background check; and

(H) Had actively participated in peer review;

T.C.A. § 24-7-123(b)(3).

The only qualification at issue[4] is whether Ms. Turner had the equivalent to three years of full-time, professional work in either child protective services, criminal justice, clinical evaluation, counseling, or forensic interviewing or other comparable work with children. T.C.A. § 24-7-123(b)(3)(C). Noting that Ms. Turner only testified to one year of experience as a forensic interviewer, the Defendant contends that her testimony that she had worked in "various social work positions" at the Carl Perkins Center for seven years was insufficient to establish the statutory requirements, and he asserts that whatever her position may have been "we know it was not professional work." He asserts that she did not meet the statutory definition of social worker and that she was accordingly not performing social work. *See* T.C.A. § 63-23-113(a).

At the hearing, the prosecutor elicited the following testimony:

Q. Okay. The next qualification it talks about is had experience equivalent to three years of full time professional work in one or a combination of the following areas such as child protective services, criminal justice, clinical evaluation[,] counseling[,] or forensic interviewing.

A. Yes, sir.

Q. And what -- how do you qualify under that?

---

[4] While the Defendant is correct that the trial court erroneously commented that Ms. Turner had a Master's degree in social work when her resume showed that she was merely working toward that degree, he does not contend that she did not meet the statutory educational requirements, as the record reflects that she held a bachelor's degree in psychology.

- 20 -

A. Based on the date of the forensic interview, I had been an interviewer for one year. And then I've worked with the center on the various social work positions for seven years.

On cross-examination, defense counsel questioned Ms. Turner further about the continuing education requirements, the definition of forensic interview, and whether the victims were aware that the recorded interview might be used in later legal proceedings. He never questioned her further about her experience in the statutorily defined fields. The trial court determined that it would find her qualified under the statute, observing, "I'm sitting here looking at step-by-step on the statute." The trial court noted Ms. Turner met each requirement, including that she had worked for the Carl Perkins Center for eight years. Trial counsel observed, "A forensic interviewer is not defined by that statute. I don't know exactly what that means. But, based on those things, Your Honor, we would — we would pass the witness."

We conclude that the Defendant's objection to Ms. Turner's qualification in this regard is waived. The Defendant requests plain error review, which requires the court to find the following factors: a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is necessary to do substantial justice. *Bishop*, 431 S.W.3d at 44 (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). We conclude that, based solely on the record before us, the Defendant cannot establish that a clear and unequivocal rule of law was breached.

At the hearing, Ms. Turner testified that she met the three-year requirement by having been employed for one year as a forensic interviewer and having "worked with the center on the various social work positions for seven years." While she did not specify which statutory field or fields her employment fell under, she did testify that her seven years' employment had qualified her under the statute at issue and that she had been deemed qualified in prior court proceedings. Defense counsel had the opportunity to cross-examine her regarding which of the statutory fields her work experience fell into, and he chose not to pursue this line of questioning. Accordingly, there is no evidence in the record on appeal that the admission of the forensic interviews breached a clear and unequivocal rule of law based on the qualifications of the interviewer under the statute. Instead, Ms. Turner's testimony was that she was qualified under the statute by her work experience consisting of one year of forensic interviews and work with the center in various social work positions for seven years. The Defendant is not entitled to relief.

## V. Sentencing

The Defendant asserts that the trial court erred in determining the length of his sentences because it misapplied enhancement factors. He argues that there was no proof that there was more than one victim or that the victims were particularly vulnerable due to their age, and he asserts that the enhancement factor that the crime was committed to gratify the Defendant's desire for pleasure or excitement was an element of aggravated sexual battery and not established with regard to the rape of a child conviction. The State concedes that some enhancement factors were misapplied but urges us to uphold the sentence on appeal.

The trial court enhanced the Defendant's sentences based on its finding that the offenses involved more than one victim, that the victims were particularly vulnerable because of age or physical or mental disability, and that the offenses were committed to gratify the Defendant's desire for pleasure or excitement. *See* T.C.A. § 40-35-114(3), (4), (7). The parties agree that application of the multiple victim enhancement was improper. *See* T.C.A. § 40-35-114(3); *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) ("[T]here cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim."). Likewise, the State concedes that the trial court misapplied the enhancement factor regarding the victims' vulnerability due to age because there was no proof pertinent to this factor other than the victims' ages. *See* T.C.A. § 40-35-114(4); *State v. Poole*, 945 S.W.2d 93, 97 (Tenn. 1997) ("[T]he State must prove the factor is applicable and there must be evidence in the record in addition to the victim's age."). The State also concedes error in enhancing the Defendant's aggravated sexual battery convictions on the basis that the crimes were committed to gratify the defendant's desire for pleasure or excitement. *See* T.C.A. § 40-35-114(7); *State v. Kissinger*, 922 S.W.2d 482, 489-90 (Tenn. 1996) (concluding that the factor could be applied to a conviction for rape or aggravated rape but not to a conviction for sexual battery or aggravated sexual battery because it was an element of that offense). The State nevertheless argues that the trial court did not abuse its discretion, noting that the Defendant abused a position of public or private trust to facilitate the commission of the offenses.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Even if the trial court "recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does

not reduce the sentence from the maximum on the basis of those factors." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The trial court is "to be guided by — but not bound by — any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Bise*, 380 S.W.3d at 706. Further, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.* The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court must consider: (1) the evidence at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. T.C.A. § 40-35-210(b).

Tennessee Code Annotated section 39-13-522(b)(2)(A) mandates a sentence as a Range II, multiple offender for a conviction for rape of a child, which is a Class A felony. T.C.A. § 39-13-522(b)(1), (b)(2)(A). Accordingly, the Defendant's sentence of thirty years fell within the statutory range of twenty-five to forty years for this crime. T.C.A. § 40-35-112(b)(1). For the Class B felony of aggravated sexual battery, the Defendant's sentences of ten years fell within the eight- to twelve-year range for a Range I offender. T.C.A. § 39-13-504(b), § 40-35-112(a)(2).

At sentencing, the trial court recited the evidence it was required to consider under the statute. After making findings regarding the enhancing and mitigating factors, the court stated that it found the Defendant's stepson to be extremely credible and noted in particular that the circumstances of the crime were aggravated by the relationship between the Defendant and the victims. In *Bise*, the trial court misapplied the single enhancement factor supporting the sentence. *Bise*, 380 S.W.3d at 708. The sentence was nevertheless upheld because the trial court articulated reasons for the sentence which were consistent with the purposes and principles of sentencing. *Id.* at 709. Here, the trial court considered the evidence mandated by T.C.A. § 40-35-210, and it determined the sentences in part based on the Defendant's relationship with the victims. The evidence showed that the Defendant was a father-figure to the victims and provided childcare

while the victims' mother was working.  We conclude that, even though the trial court committed errors in its determinations regarding the application of enhancement factors, the sentences imposed were within the statutory range and consistent with the purposes and principles of sentencing, and we accordingly conclude there was no abuse of discretion.

## CONCLUSION

Because the State failed to establish venue for the Defendant's conviction for aggravated sexual battery based on touching his stepdaughter's breasts in Count 4, we reverse the conviction and remand for any further proceedings.  *Hutcherson*, 790 S.W.2d 535 (remanding when the evidence did not establish venue).  We otherwise affirm the convictions and sentences.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE